**BOORHEM–FIELDS, INC., MAC Acquisitions, L.P., and Meridian Aggregates Company, Appellants,**

**v.**

**BURLINGTON NORTHERN RAILROAD COMPANY, Appellee.**

No. 06–94–00040–CV.

Court of Appeals of Texas, Texarkana.

Argued Aug. 19, 1994.

Decided Aug. 30, 1994.

Andrew T. McKinney, IV, Lynne Ford, Phillips & Akers, Houston, for appellants.

Albon O. Head, Jr., Jeffrey J. Wolf, Jackson & Walker, Ft. Worth, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

This is an appeal from a judgment holding Boorhem–Fields, Incorporated (Boorhem–Fields), MAC Acquisitions, L.P., and Meridian Aggregates Company liable under both tort and breach of contract theories for damages resulting from a train wreck. Boorhem–Fields complains of certain jury instructions, the sufficiency of the evidence, the

award of attorney's fees, and the trial court's granting of a partial summary judgment and declaratory relief. We resolve the issues chiefly in favor of Burlington Northern Railroad Company, but conclude that declaratory relief was not appropriate.

The pertinent working relationship between Burlington Northern and Boorhem–Fields commenced in 1987 with the execution of two contracts: a Lease Agreement and an Industrial Track Agreement. Under the lease agreement, Boorhem–Fields leased a strip of land with a sidetrack adjacent to the railroad's mainline. The track agreement controls the construction, maintenance, and operation of the sidetrack serving Boorhem–Fields' rockyard in Frisco, Texas. Burlington Northern had a train that ran from Boorhem–Fields' Oklahoma quarry to the rockyard facility. The train brought railcars loaded with crushed rock to the Frisco site. Boorhem–Fields' employees would unload the cars, and the train would pick up the empty cars on its return trip.

This suit arose from a train wreck that occurred on June 16, 1991. Fourteen rock cars rolled out of the sidetrack serving the rockyard and into the clearance area for Burlington Northern's mainline track. The crew on the next train that went by the rockyard saw the obstruction but could not stop the train in time to avoid a collision. The collision injured three Burlington Northern employees and caused significant property damage.

Burlington Northern sued Boorhem–Fields to recover for damage to the railroad's property and to seek indemnification from Boorhem–Fields for any damages arising from personal injury lawsuits filed by the injured railroad workers. MAC Acquisitions and Meridian have no direct connection with the collision, but were made parties to the lawsuit because they are the assignees of Boorhem–Fields' track agreement and lease agreement, respectively.

Causation of the accident was disputed at trial. While the railcars had air brakes, air brakes gradually bleed off; thus, handbrakes are also used. Burlington Northern's position at trial was that Boorhem–Fields had

failed to set any or a sufficient number of handbrakes to prevent the fourteen cars from rolling down the track, which had approximately a .6% grade. Boorhem–Fields, however, argued that the derailing mechanism at the end of the sidetrack was insufficient in that it failed to prevent the rollout of the cars onto the mainline. Witnesses for the railroad testified that a derailing mechanism is not a substitute for setting handbrakes and that its purpose is to derail any equipment rolling down the sidetrack to prevent it from moving onto the mainline. The mechanism did derail the cars, but the derailed cars still blocked the mainline.

Burlington Northern had the final say on the minimum type of derail protection required, although the final decision as to what kind of mechanism was installed was made by Boorhem–Fields, and Boorhem–Fields could have installed greater derail protection if it chose to do so. Boorhem–Fields maintained that it relied on the railroad's expertise in deciding what derail mechanism was appropriate. The switch point mechanism installed at the sidetrack meets Burlington Northern's minimum standard for a grade between .5% and 1%. After the accident, Burlington Northern went onto the property and installed a runaway track. Burlington Northern testified that it did so because of the operating practices Boorhem–Fields was using at its Frisco facility.

The jury found that Boorhem–Fields was negligent and grossly negligent, that Boorhem–Fields trespassed on Burlington Northern's property, and that Boorhem–Fields had breached the clearances provisions in both the lease and track agreements. The jury found that Burlington Northern was not contributorily negligent. The trial court entered judgment jointly and severally against Boorhem–Fields, MAC Acquisitions, and Meridian in the amount of $691,229.66 (plus prejudgment and post-judgment interest, costs, and attorneys' fees). The trial court awarded exemplary damages against Boorhem–Fields in the amount of $1.00. The trial court also entered declaratory judgment that Boorhem–Fields and MAC, the assignee of the track agreement, must indemnify Burlington Northern for all personal injury damages and expenses, including attorney's fees, resulting from Boorhem–Fields' breach of the clearances provision in the Industrial Track Agreement.

## JURY INSTRUCTIONS

■ Boorhem–Fields contends that the trial court erred in submitting two jury questions on the breach of contract issues that allowed the jury to reach a finding based on methods of breach not pleaded or supported by the evidence. In setting out its contract claims, Burlington Northern alleged that

[b]y allowing the fourteen railcars under its custody and control to foul Burlington Northern's mainline track on June 16, 1991, Boorhem–Fields breached the Trackage Agreement and Lease in that Boorhem–Fields permitted an obstruction to remain within 8½ feet laterally of the center of the rail of the mainline track.

Boorhem–Fields had submitted a proposed question asking whether Boorhem–Fields had permitted one or more railcars to remain within the specified clearance area. Instead, and over Boorhem–Fields' objection, the trial court submitted two questions asking the jury whether Boorhem–Fields had failed to comply with the clearances provisions of the track agreement and lease, respectively. In all jury cases, the court is required, whenever feasible, to submit the cause upon broad-form questions which are raised by the pleadings and evidence. TEX.R.CIV.P. 277, 278.

Boorhem–Fields contends that Burlington Northern had limited itself to one method of breach as specified in its petition and that the trial court erred in submitting a jury question that allowed the jury to consider methods not pleaded in determining whether there was a breach. A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. TEX.R.CIV.P. 47; *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982). The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense. *Roark,* 633 S.W.2d at 810. The record as a whole indicates that Boorhem–Fields had fair notice that the entire clearances provision was in dispute.

The petition sets out the two clearances provisions, and the breach of those provisions was the issue submitted to the jury. The cause of action for breach of contract claims accuses Boorhem–Fields of allowing the fourteen railcars under its custody and control to block Burlington Northern's mainline track, which raises the issue of placement of the railcars in such a position as to block the track.

■ Also, the lease agreement has only two methods of breach and does not include the prohibition against allowing an obstruction to remain too close to the track; yet Boorhem–Fields did not file a special exception to Burlington Northern's petition on this ground. *See* TEX.R.CIV.P. 90. Absent a special exception, a petition will be construed liberally in favor of the pleader. *Roark,* 633 S.W.2d at 809.

Pleadings shall be construed so as to do substantial justice. TEX.R.CIV.P. 45. There is every indication that the parties knew that the clearances provisions, in their entirety, were the basis for the breach of contract action so that submission of the broad-form question is not outside the scope of the pleadings.

■ In the alternative, Boorhem–Fields contends that the language of the two contract questions required the jury to determine questions of law because the trial court had already rendered a partial summary judgment that the two clearances provisions were unambiguous. Boorhem–Fields did not object to the submission of these questions on this ground. When a defectively framed

issue is contained in the proposed charge, the tender of a correct issue does not preserve error. *Hernandez v. Montgomery Ward & Co.,* 652 S.W.2d 923, 925 (Tex.1983), *overruled on other grounds, Acord v. General Motors Corp.,* 669 S.W.2d 111, 114 (Tex. 1984). Any complaint that the charge is defective in that it asks the jury to determine a question of law is waived if not objected to for this reason. TEX.R.CIV.P. 274; *Wilgus v. Bond,* 730 S.W.2d 670 (Tex.1987).[1]

### SUFFICIENCY OF EVIDENCE

Boorhem–Fields challenges the legal and factual sufficiency of the evidence to support the jury's findings that it had breached the clearances provision of the track and lease agreements or was negligent, grossly negligent, or had trespassed onto Burlington Northern's property. In reviewing a no evidence point, we consider only the evidence and inferences that support the challenged finding and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992). In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence and set aside the verdict only if the challenged finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

### BREACH OF CONTRACT:

Boorhem–Fields asserts that there is no or insufficient evidence to support the jury's findings that it failed to comply with the clearances provisions of the track and lease agreements.[2]

---

1. Boorhem–Fields also raises several questions concerning the trial court's jury instructions on *res ipsa loquitur* and trespass. We have reviewed these questions and find no error in the manner of the trial court's submission. In light of our disposition of the other legal issues, these questions do not warrant further discussion.

2. The clearances provision in the track agreement states:

    Section 4. Industry shall not place, or permit to be placed, or to remain, any material, structure, pole or other obstruction within 8½ feet laterally of the center or within 23 feet vertically from the top of the rail of said track; provided that if by statute or order of competent public authority greater clearances shall

be required than those provided for in this Section 4, then Industry shall strictly comply with such statute or order. However, vertical or lateral clearances which are less than those hereinbefore required to be observed but are in compliance with statutory requirements will not be or be deemed to be a violation of this Section. Industry agrees to indemnify Railroad and save it harmless from and against any and all claims, demands, expenses, costs and judgments arising or growing out of loss of or damage to property or injury to or death of persons occurring directly or indirectly by reason of any breach of the foregoing or any other covenant contained in this Section.

The clearances provision in the lease agreement states:

■ There are three ways in which Boorhem–Fields could breach the track agreement: by placing an obstruction, by permitting an obstruction to be placed, or by permitting an obstruction to remain within the clearance area. There are two ways in which Boorhem–Fields could breach the lease agreement: by placing or permitting the placement of an obstruction within the clearance area.

Boorhem–Fields argues that to breach the contract provisions by placing or permitting placement of an obstruction requires an affirmative act on Boorhem–Fields' part. While the word "placing" may connote an affirmative act, the prohibition against permitting an obstruction to be placed on the tracks suggests that the breach can take a more passive form. Here, fourteen railcars under Boorhem–Fields' control were not properly secured, rolled out of the sidetrack, derailed, and blocked the mainline track. The jury could reasonably have found that Boorhem–Fields placed or permitted an obstruction to be placed within the proscribed area in violation of the lease and track agreements. There was also sufficient evidence for the jury to find that Boorhem–Fields further breached the track agreement by permitting an obstruction it created to remain in the clearance area.

Because the judgment is grounded upon breach of contract, there may be no necessity to discuss the negligence questions. However, we deem it prudent to discuss some of these issues in the event our view of the contract questions should later be determined to be erroneous.

NEGLIGENCE:

Boorhem–Fields asserts that it could not have foreseen the railroad's failure to select an adequate derail mechanism and that the inadequate mechanism was an intervening and independent cause of the accident that eliminated Boorhem–Fields' responsibility for the accident. The jury was instructed that a new and independent cause is the act or omission of a separate or independent agency, not reasonably foreseeable, which destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question, and thereby becomes the immediate cause of the occurrence. *See Phoenix Ref. Co. v. Tips,* 125 Tex. 69, 81 S.W.2d 60, 61 (1935); *see also* 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 3.01 (1989).

■ There is a distinction between a true intervening act, which supersedes the original negligent act and operates as the efficient cause, and a concurrent act, which cooperates with the still-persisting original act in bringing about the injury. *Bell v. Campbell,* 434 S.W.2d 117, 122 (Tex.1968). When the new cause cooperates with the original negligence in causing the injury, the original negligence remains a proximate cause of the injury regardless of the fact that the new concurring cause was not reasonably foreseeable. *Id.* There can be concurrent proximate causes of an accident, and all persons whose negligent conduct contributes to the injury, proximately causing the injury, are liable. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992).

■ The evidence shows that a derail mechanism is not a substitute for using handbrakes, and that if sufficient handbrakes are set, there is no need for a derail mechanism. Ignoring for the moment the jury's refusal to find that Burlington Northern's own negligence was a proximate cause of the accident, the derail mechanism was, at most, a contributing cause of the accident that Boorhem–Fields had set in motion by failing to use a sufficient number of handbrakes to secure the railcars. There is factually sufficient evidence to support the jury's finding that Boorhem–Fields' negligence was a proximate cause of the accident.

GROSS NEGLIGENCE:

■ Gross negligence is more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire

---

7. Lessee shall not place, or permit to be placed, any material, structure, pole or other obstruction within 8½ feet laterally of the center line or within 23 feet vertically from the top of the rail of any track. If, by statute or order of public authority, greater clearances shall be required, Lessee shall strictly comply with such statute or order.

want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected. TEX.CIV.PRAC. & REM. CODE ANN. § 41.001(5) (Vernon Supp.1994). The test for gross negligence contains both an objective and a subjective component. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21, 22 (Tex.1994). Objectively, the defendant's conduct must involve an extreme degree of risk, which is a function of both the magnitude and the probability of the anticipated injury to the plaintiff. *Id.; see also Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 325–26 (Tex.1993). Subjectively, there must be evidence that the defendant was consciously indifferent to the extreme risk. *Moriel,* 879 S.W.2d at 21; *Alexander,* 868 S.W.2d at 326.

■ Boorhem–Fields does not challenge the objective component of the existence of an extreme degree of risk, but contends that there is no or insufficient evidence to show that it was consciously indifferent to such a risk. The requirement of conscious indifference requires proof that the defendant had actual subjective knowledge of the extreme risk of serious harm. *Moriel,* 879 S.W.2d at 22–23. The defendant's subjective mental state can be shown by direct or circumstantial evidence. *Id.*

■ Burlington Northern produced evidence that some of its railroad employees had warned Boorhem–Fields' plant manager about the need to be more careful and to use sufficient handbrakes to prevent a rollout. It also produced evidence of a rollout at the plant where two or three cars derailed about three months before the accident giving rise to this suit. Also, the lease agreement signed by Boorhem–Fields contains a clause which acknowledges that the premises are in dangerous proximity to railroad tracks. It further cautions that persons or property on Boorhem–Fields' leased premises are in danger of death, injury, or destruction incident to the operation of the railroad, including the risk resulting from derailment, fire, or inade-

quate clearance. This provision shows that, at a minimum, Boorhem–Fields was aware of the dangers inherent in the operation of its facility. There is sufficient evidence from which the jury could infer that Boorhem–Fields was aware of the extreme risk, yet acted in conscious indifference to this risk.[3]

■ Boorhem–Fields further contends that it has established as a matter of law that Burlington Northern was negligent or had not complied with the maintenance provision in the track agreement. In the alternative, Boorhem–Fields asserts that the jury's failure to so find is against the great weight and preponderance of the evidence. When a party challenges the legal sufficiency of the evidence to support an adverse finding on which he had the burden of proof, he must demonstrate on appeal that he conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). The reviewing court first examines the record for evidence to support the finding, while ignoring all evidence to the contrary; if there is no evidence to support the finding, the reviewing court then examines the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

■ When a party challenges the factual sufficiency of the evidence supporting a finding on an issue on which he had the burden of proof, we consider all of the evidence and set aside the verdict only if the verdict is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d at 176; *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

■ Boorhem–Fields asserts that Burlington Northern's negligent choice of an inadequate derail mechanism was a contributing cause of the accident. While Burlington Northern approved Boorhem–Fields' blueprints for the sidetrack and specified the minimum mechanism Boorhem–Fields could install on the sidetrack, Boorhem–Fields was

---

**3.** Boorhem–Fields also challenges the sufficiency of the evidence to support the jury's finding that it trespassed onto the railroad's property. Its no evidence point was not preserved for our review.

We do conclude that there is insufficient evidence to support the trespass finding, although this conclusion does not affect the propriety of the judgment.

free to install a higher quality mechanism. The mechanism specified by Burlington Northern met industry and Burlington Northern's own standards for that grade of track. One of Burlington Northern's district trainmasters stated that he was unaware of any derail mechanism that could have stopped fourteen loaded railcars that weighed 130 tons each and rolled the distance of four football fields before reaching the derail mechanism. Boorhem–Fields did not establish as a matter of law that Burlington Northern's negligence was a proximate cause of the accident. The jury's finding that Burlington Northern's negligence, if any, was not a proximate cause of the occurrence in question is not against the great weight and preponderance of the evidence.

■ Regarding Boorhem–Fields' allegation that Burlington Northern was itself in breach of contract, this allegation is premised on a provision in the track agreement requiring Burlington Northern to keep its portion of the track free and clear of obstacles and debris and to provide a safe workway for railroad employees. The evidence shows that, on the same day of the wreck, Burlington Northern sent out personnel to evaluate the accident site and arrange for outside cleanup crews to remove the overturned railcars from the track. Invoices for these services were in evidence. Boorhem–Fields produced no evidence to show that Burlington Northern knew of the obstruction before the accident or otherwise waited too long before performing its maintenance obligation. Boorhem–Fields did not establish Burlington Northern's breach of contract as a matter of law. The jury's finding that Boorhem–Fields did not breach the contract is not against the great weight and preponderance of the evidence.

## DAMAGES

■ Boorhem–Fields contends that the damages incurred here were not within the contemplation of the parties at the time they signed the track and lease agreements. In an action for breach of contract, actual damages may be recovered when the loss is the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v.*

*Johnson Group, Inc.,* 615 S.W.2d 685, 687 (Tex.1981). The contracts specify that Boorhem–Fields agrees to indemnify the railroad for claims, demands, expenses, costs, and judgments arising out of loss or damage to property or the injury or death of persons resulting from Boorhem–Fields' breach. The damages recovered here, for the property damage incurred by Burlington Northern, are precisely the sort of damages the parties contemplated as a result of a violation of the clearances provisions in the two agreements.

Boorhem–Fields alternatively contends that the damages, even if contemplated, were not a natural and probable consequence of its conduct under these particular facts because of the independent intervening act of Burlington Northern in selecting an inadequate derail mechanism that eliminated Boorhem–Fields' responsibility for any actual damages. For the same reasons discussed in connection with Boorhem–Fields' challenge to the sufficiency of the evidence supporting the jury's finding that Boorhem–Fields' negligence proximately caused the accident, this contention is without merit.

■ Boorhem–Fields contends that the trial court erred in rendering partial summary judgment that railcars can be an obstruction for purposes of the clearances provisions in the lease and track agreements because this renders the contracts meaningless and unenforceable. Boorhem–Fields argues that to interpret the term "obstruction" as including railcars violates the intent of the parties when they entered into the two agreements to use the sidetrack for handling railcars because such an interpretation would prohibit placing railcars on that sidetrack.

An obstruction is a hindrance, obstacle, or barrier. BLACK'S LAW DICTIONARY 1078 (6th ed. 1990). Of course, railcars are not always an obstruction, but railcars that are not authorized to be on the tracks or that are derailed and blocking the track can be the sort of obstacle and danger that the clearances provision is intended to prevent. Therefore, the partial summary judgment was proper.

## ATTORNEY'S FEES

■ Boorhem–Fields asserts that the trial court erred in awarding attorney's fees because there was no basis to support this award. The railroad requested attorney's fees in conjunction with its breach of contract claims. A person may recover reasonable attorney's fees in addition to the amount of a valid claim and costs if the claim is based on an oral or written contract. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1986). The railroad properly presented its claim to Boorhem–Fields. TEX.CIV.PRAC. & REM.CODE ANN. § 38.002 (Vernon 1986). Therefore, attorney's fees were recoverable.[4]

Boorhem–Fields also asserts that the lease provision is unenforceable under the express negligence doctrine because it could require Boorhem–Fields to indemnify the railroad for its own negligence. *See Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705 (Tex.1987). As stated before, the award of attorney's fees is proper in a breach of contract suit. Furthermore, the jury found that the railroad was *not* a negligent party; therefore, whether the provision satisfies the express negligence test is irrelevant. *Continental Steel Co. v. H.A. Lott, Inc.,* 772 S.W.2d 513, 517 (Tex.App.—Dallas 1989, writ denied); *see also Construction Investments and Consultants, Inc. v. Dresser Indus.,* 776 S.W.2d 790, 793 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (Mirabal, J., concurring). The trial court did not err in awarding attorney's fees.

## DECLARATORY RELIEF

Boorhem–Fields further contends that the trial court erred in rendering declaratory judgment that it and its assignee, MAC Acquisitions, were required to indemnify Burlington Northern for all personal injury damages and expenses arising from Boorhem–Fields' breach of the clearances provision of the Industrial Track Agreement. Boorhem–Fields complains that declaratory relief was premature because no personal injury claims were raised in this suit and the personal injury claims filed by the three railroad employees have yet to be litigated.

■ The Uniform Declaratory Judgments Act is a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power permitting the rendition of advisory opinions. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993). Declaratory relief is appropriate only to resolve justiciable controversies between parties; the Act gives the court no power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication. *See Firemen's Ins. Co. v. Burch,* 442 S.W.2d 331, 333 (Tex.1968); *see also* TEX.CIV.PRAC. & REM. CODE ANN. §§ 37.001, et seq. (Vernon 1986 & Supp.1994) (Uniform Declaratory Judgments Act). The possibility that liability triggering indemnity will be incurred in a pending action is a future hypothetical event within the meaning of this rule. *Stop 'N Go Mkts. v. Executive Sec. Sys., Inc.,* 556 S.W.2d 836, 837 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ).

■ The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties. *Texas Ass'n of Business,* 852 S.W.2d at 444. The personal injuries arising from Boorhem–Fields' breach, the railroad's liability for its employees' injuries, and the amount of damages to compensate for these injuries have yet to be determined. Fact issues remain to be decided. Until that time, determinations based on one possible outcome of such decisions are not proper areas for declaratory relief.

■ We modify the judgment to delete the declaratory relief provisions of the judgment and the recovery for punitive dam-

---

4. Attorney's fees are recoverable under the indemnity clause in the track agreement and lease agreement in a suit for breach of the agreement. *See, e.g., Tubb v. Bartlett,* 862 S.W.2d 740, 751 (Tex.App.—El Paso 1993, writ denied) (an indemnitee can recover litigation costs while enforcing an indemnity provision even though

ages[5] and, as modified, we affirm the trial court's judgment.

those costs are not specifically covered by the agreement).

5. The trial court ordered that Burlington Northern recover $1.00 as exemplary damages from Boorhem–Fields. When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to judgment on the theory entitling him to the greatest or most favorable relief. Tex.R.Civ.P. § 301; *Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex.1988). As noted previously, the judgment insofar as it allows for an award of attorney's fees is grounded on a breach of contract theory. Exemplary damages are not recoverable in a breach of contract action. *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742 (Tex.1986). Furthermore, extended discussion of the award of $1.00 punitive damages is not warranted under the *de minimis non curat lex* doctrine. *See, e.g., HSAM Inc. v. Gatter,* 814 S.W.2d 887, 892 (Tex.App.—San Antonio 1991, writ dism'd by agr.) (advocating the proposition that the law does not care for, or take notice of, trifling matters).