Kenneth E. BOTTOMS, individually and as Personal Representative of the Estate of Sammie R. Bottoms, and Karen Stephens, Cathy Bottoms Stimmel, Lisa A. Thompson, Appellants,

v.

Charles E. SMITH, M.D. and Kelsey–Seybold Clinic, P.A., Appellees.

No. 14–95–00276–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 30, 1996.

Rehearing Overruled June 27, 1996.

Robert K. Schaffer, Houston, for appellants.

H. Kent Twining, Houston, M. Karinne McCullough, Houston, for appellants.

Before YATES and O'NEILL, JJ., and DRAUGHN, J. (sitting by assignment.)

## OPINION

O'NEILL, Justice.

This is an appeal from a summary judgment in favor of appellees in a medical malpractice action. In one point of error, appellants argue that summary judgment was improvidently granted because there exist genuine issues of material fact. We reverse and remand for a trial on the merits.

### I. Background

On June 16, 1986, Sammie R. Bottoms, the decedent, underwent an out-patient colonoscopy to the cecum, which included the removal of an 8mm sessile polyp in the ascending colon and a 3mm hyperplastic lesion in the rectum. The decedent was seen on September 28, 1987, by Dr. Charles E. Smith, M.D. ("Dr. Smith"), appellee, who noted in the decedent's medical chart that she had a history of polyps and needed a follow-up colonoscopy. No follow-up colonoscopy was performed at that time. The decedent returned to appellee for medical care throughout 1988 and 1989 for unrelated problems. On January 25, 1989, the decedent complained to appellee about stomach pain which radiated around her side and into her back. Although Dr. Smith noted the need to schedule a pap smear, mammogram and follow-up on the colon polyps, a follow-up colonoscopy was not done at that time.

On September 12, 1989, a colonoscopy was performed on the decedent which did not cover the entire colon. The results were normal to fifty centimeters. On November 9, 1989, the decedent complained to Dr. Smith about fever and pain in her right side. She was then seen in the emergency room at St. Luke's Episcopal Hospital, where she was diagnosed with a pelvic cystic mass later determined to be an ovarian cystic tumor. The decedent was subsequently found to have cancer of the colon, with metastasis to the ovaries and liver. At that point, the decedent had a zero percent chance of survival. The decedent died on June 11, 1991.

Appellants filed the above action against Dr. Smith and Kelsey–Seybold Clinic, P.A., appellees, alleging that they were negligent in failing to perform a follow-up colonoscopy in 1987, proximately causing the decedent's death. Appellees moved for summary judgment claiming the appellants had failed to raise a fact issue because their expert did not establish that Dr. Smith's conduct fell below the recognized standard of care or, alternatively, was the proximate cause of the decedent's death. The trial court granted summary judgment in favor of appellees.

### II. Standard of Review

The Texas Supreme Court has clearly articulated the appropriate standard to be applied when reviewing summary judgments:

1. the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law;

2. in deciding whether a disputed material fact issue precludes summary judgment, the court must take evidence favorable to the non-movant as true; and

3. the court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Karl v. Oaks Minor Emergency Clinic,* 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1992, writ denied). When an order granting summary judgment does not specify the grounds upon which it is granted, as in the present case, the judgment will be affirmed on appeal if any of the grounds raised in the motion are meritorious. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

### III. Discussion

■ In their single point of error, appellants claim the trial court erred in granting appellees' motion for summary judgment because material fact issues were raised as to the applicable standard of care and proximate cause.

### A. Standard of Care

Appellees presented as summary judgment evidence the deposition testimony of appellants' expert witness, Dr. Peter Sullivan, M.D. ("Dr. Sullivan"). Appellees claim Dr. Sullivan's deposition testimony conclusively established that Dr. Smith complied with the applicable standard of care.

Dr. Sullivan testified by deposition that the polyps removed from the decedent in 1986 were hyperplastic, and admitted that "probably" the "majority" of physicians do not consider hyperplastic polyps to be pre-cancerous. Dr. Sullivan further admitted that "the current thinking by, probably, the majority of people" is that "patients who have hyperplastic polyps, as opposed to pre-cancerous polyps, are at no higher risk in developing cancerous lesions than the general population." Dr. Sullivan acknowledged that his view regarding the nature of hyperplastic polyps and the need for follow-up colonoscopy was "in the minority." Finally, Dr. Sullivan admitted that the "majority" of physicians would not have felt that the decedent's history indicated the need for a follow-up colonoscopy in September of 1987:

Q: ... would it be fair to say that the majority of physicians, based on a history of hyperplastic polyps, not pre-cancerous but hyperplastic polyps, that the majority of physicians would

not have felt that a follow-up colonoscopy was indicated, by history, in September of '87 in this case? Would that be a fair way of saying it?

A: Probably.

Relying on this testimony, appellees moved for summary judgment claiming that Dr. Sullivan's opinion regarding the standard of care was merely his own personal view, which he conceded represents a minority position. Thus, appellees argue, "the defendants established the applicable standard of care through the [appellants'] own medical expert and further showed that Dr. Smith followed the recognized standard of care."

In response to appellees' summary judgment proof, appellants offered the affidavit of Dr. Sullivan, which states in pertinent part as follows:

It is my opinion based on reasonable medical probability that the standard of care in 1987 required that patients such as Ms. Bottoms with a history of removal of a sessile polyp and a hyperplastic polyp should have a follow-up colonoscopy performed, one (1) year following the discovery of the polyps. Dr. Smith failed to comply with the standard of care in this situation.

Appellants also offered portions of Dr. Sullivan's deposition testimony regarding the standard of care. When asked whether the standard of care in September of 1987 would have required a physician in Dr. Smith's position to do a follow-up colonoscopy on the decedent under the circumstances, Dr. Sullivan responded that "the standard of care would have been to proceed with a colonoscopy, at least a follow-up colonoscopy after the original one to make sure those polyps had not grown back."

Finally, appellants offered the following deposition testimony of Dr. Smith:

... anyone that's had colon polyps needs to have a negative colon exam the next year or needs to have a follow-up colon exam within one year. And if the colon exam is negative they have to continue with it every year. So [the decedent] had been due to have a colonoscopy in

1987.... anyone that has had colon polyps needs a follow-up colonoscopy.

Appellants claim the foregoing summary judgment proof was sufficient to create a fact issue regarding the appropriate standard of care and Dr. Smith's failure to comply therewith. We agree.

██ To prevail on summary judgment, a defendant in a medical malpractice action must establish as a matter of law: (1) the applicable standard of care; (2) the treatment and services provided the patient and the reason for that treatment; and (3) that the treatment and services complied with the standard of care used by other reasonably prudent health care providers in the same or similar circumstances. *Davis v. Manning*, 847 S.W.2d 446, 449 (Tex.App.—Houston [14th Dist] 1993, no writ). Once a defendant submits expert opinion establishing the standard of care and his compliance therewith, the plaintiff has the burden of producing a doctor of the same school or practice to establish that the defendant did not comply with the medical standard of care. *Stanton v. Westbrook*, 598 S.W.2d 331, 333 (Tex. App.—Houston [14th Dist.], 1980) (citing *Smith v. Guthrie*, 557 S.W.2d 163 (Tex.Civ. App.—Fort Worth 1977, writ ref'd n.r.e.)). The plaintiff is not required to show its ability to prevail on the merits of the case, but need only produce evidence raising an issue of fact on the elements negated by movant's summary judgment evidence. *Chopra v. Hawryluk*, 892 S.W.2d 229, 231 (Tex.App.— El Paso 1995, writ denied) (citing *Cloys v. Turbin*, 608 S.W.2d 697, 700 (Tex.Civ.App.— Dallas 1980, no writ)).

██ The issue presented is not whether there are inconsistencies between Dr. Sullivan's deposition testimony and his affidavit, but whether the summary judgment evidence was sufficient to create a fact issue. Dr. Sullivan's affidavit and portions of his deposition testimony affirmatively state that Dr. Smith did not comply with the standard of care in treating the decedent. Although we agree that Dr. Sullivan's testimony in this regard appears inconsistent, such inconsistency does not negate that testimony. As stated by the San Antonio Court of Appeals

in *Knetsch v. Gaitonde*, 898 S.W.2d 386 (Tex. App.—San Antonio 1995, no writ):

> This court agrees that the expert's testimony can be argued to be inconsistent, and that instances of conflict can be found between the affidavit and the expert's deposition. More certitude is expressed in the affidavit than under the press of cross-examination in the deposition, but this does not negate the testimony. It is impeachment material. The words in the affidavit do raise a fact issue.

*Id.* at 388; *see also Cortez v. Fuselier*, 876 S.W.2d 519, 521 (Tex.App.—Texarkana 1994, writ denied) (conflict between expert witness deposition and affidavit is a fact issue for the jury and not proper basis for summary judgment) (citing *Proctor v. Southland Life Ins. Co.*, 522 S.W.2d 261 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.)). A deposition does not have controlling effect over an affidavit in determining whether a motion for summary judgment should be granted. *Randall v. Dallas Power & Light Co., et al.*, 752 S.W.2d 4, 5 (Tex.1988) (conflict between plaintiff's deposition and affidavit in automobile accident case created fact question) (citing *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 562 (Tex.1962)). "Thus, if conflicting inferences may be drawn from a deposition and from an affidavit filed by the same party in opposition to a motion for summary judgment, a fact issue is presented." *Id.* (citing *Gaines*, 358 S.W.2d at 562).

Applying these guidelines, we find there is some evidence that material fact issues exist regarding the applicable standard of care and Dr. Smith's failure to comply therewith. Therefore, a grant of summary judgment on this ground would be error. However, appellees also moved for summary judgment on the issue of proximate cause. We must now determine whether the judgment may be affirmed on that basis.

### B. Proximate Cause

██ A plaintiff in a medical malpractice action must not only prove a failure to comply with the applicable standard of care, but must show a causal connection between the breach of the standard of care and the injury. *Pinckley v. Gallegos*, 740 S.W.2d 529, 531

(Tex.App.—San Antonio 1987, writ denied). The plaintiff must adduce evidence of a "reasonable medical probability" that the injuries in question were caused by the negligence of the defendant. *See, e.g., Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex.1988). The effect of this standard is to bar recovery where the defendant's negligence deprived the plaintiff of only a fifty percent (50%) or less chance of avoiding the ultimate harm. *Kramer v. Lewisville Memorial Hosp.,* 858 S.W.2d 397, 400 (Tex.1993). In their motion for summary judgment, appellees contested the appellants' ability to prove that, absent the alleged negligence, the decedent had a greater than 50% chance of survival.

Dr. Sullivan testified about the four-stage classification system for colon cancer known as Duke's staging. Generally, colon cancer starts out in a polyp, grows slowly through the wall of the colon into the lymph nodes, and finally spreads to distant organs such as the liver, bone, lung or brain. Duke's A stage cancer would be localized within the tip of a polyp and, if detected and treated, has an 85% to 90% five-year survival rate. Duke's B stage cancer would indicate growth into the wall of the colon, with a 65% to 75% five-year survival rate. Duke's C stage cancer has spread into the lymph nodes, with a five-year survival rate dependent upon its subclassification as C1 (55% to 60%) or C2 (50% to 55%). Duke's D stage cancer has spread to the distant organs and has a 0% five-year survival rate. It generally takes between five and eight years from the time the cancer starts at the tip of a polyp to the point where it spreads to the organs and becomes a Duke's stage D cancer.

Appellees moved for summary judgment on the alternative ground that Dr. Smith's failure to perform a follow-up colonoscopy in 1987, even if negligent, was not the proximate cause of the decedent's death. Appellees' summary judgment proof consisted of excerpts from the deposition testimony of Dr. Sullivan. The following testimony was relied upon by appellees to negate proximate cause: (1) Dr. Sullivan testified he believed that the decedent was a Duke's D stage cancer by January 1989, that she was a Duke's C2 or D by October 1988, and that she had probably progressed to a C2 by March 1988, with a statistical survival rate of about 30%; (2) Dr. Sullivan testified it would be hard to know without speculating whether the decedent was a B1, B2, C1 or C2 in September of 1987, and that if she had been a stage C or D her five-year survival rate would have been between 0% and 50%; and (3) Dr. Sullivan admitted that whatever gave rise to the decedent's cancer may not have been visible in September of 1987. Relying upon this testimony, appellees argued that appellants' own medical expert could not establish a probable causal link between the alleged negligence and the decedent's death.

In response to appellees' summary judgment proof, appellants offered the affidavit of Dr. Sullivan, which stated in pertinent part as follows:

If the appropriate diagnostic tests had been done, it is more likely than not, that a polyp or lesion would have been seen and diagnosed. If this polyp or lesion had been identified in September of 1987, it is more likely than not, that it would have been a Duke stage A or B cancer with a five (5) year survival rate of 88% or better. The delay in the evaluation of Ms. Bottoms' condition and the fact that follow-up colonoscopies were not done to determine whether the polyps in 1986 had recurred in reasonable medical probability resulted in the progression of the stage of the disease from probably a B1 or B2 to a D. This meant the patient, Ms. Bottoms, went from an approximate 88% possible five (5) year survival rate to a five (5) year survival rate of zero (0).

Appellants also offered Dr. Sullivan's deposition testimony that, considering the staging of the disease in September of 1987, he would have expected a follow-up colonoscopy to reveal something in the cecum, and it was more likely than not that if something had been seen it would have been either a stage A or stage B lesion with a survival rate of greater than 70%. Appellants also offered the deposition testimony of Dr. F. Lyone Hochman, appellees' expert, that if a follow-up colonoscopy had been done in 1987, it is more likely than not that something would have been seen in the ascending colon to alert the

health-care providers of the potential for cancer. Dr. Hochman further testified that if the tumor or lesions had been identified in 1987, there would have been a different result in the decedent's condition.

 We believe the appellants' summary judgment proof was sufficient to create a fact issue regarding the proximate cause of the decedent's death. Again, although we agree that Dr. Sullivan's deposition testimony might appear inconsistent, this does not negate the effect of the affidavit. It is the party moving for summary judgment that has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Nixon,* 690 S.W.2d at 548. As a reviewing court we take as true all evidence in favor of the non-movant. *Nixon,* 690 S.W.2d at 548–49. The fact that conflicting inferences may be drawn from the deposition and the affidavit indicates that a fact issue is presented. *Knetsch,* 898 S.W.2d at. 388; *Cortez,* 876 S.W.2d at 521. Thus, we conclude there is some evidence that material fact issues exist regarding the proximate cause of the decedent's death.

Appellants' point of error is sustained.

The judgment of the trial court is reversed and remanded for a trial on the merits.