Barbara **BENITZ**, Individually and on behalf of the Estate of Joseph Weldon Benitz, deceased, Donna Gail Benitz, Brenda Kay Benitz, Robert Lee Benitz, Daniel DeQayne Benitz, Minor Children, and Joseph Edward Benitz, **Appellants**,

v.

**THE GOULD GROUP and Mitchell Max Dullnig, M.D., Appellees.**

No. 04–99–00576–CV.

Court of Appeals of Texas, San Antonio.

July 5, 2000.

Derek L. Davis, Byrd, Davis & Eisenberg, L.L.P., Austin, for appellants.

Humberto G. Garcia, John D. Mereness, Johnson, Curney, Garcia, Wise & Farmer, P.C., San Antonio, for appellees.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### FACTUAL AND PROCEDURAL BACKGROUND

Joseph Benitz went to the emergency room on January 7, 1995, complaining of pain in both his shoulders and experiencing elevated blood pressure. He was diagnosed with rotator cuff inflamation and hypertension, prescribed medication to that effect, and sent home. Two days later, Benitz returned to the emergency room, this time complaining of localized pain in his right arm and shoulder, as well as epigastric pain, which Benitz believed was indigestion. Benitz was treated by Dr. Dullnig, the defendant. Benitz did not tell Dr. Dullnig he was experiencing chest pain. Dr. Dullnig performed three EKGs and found the results to be normal. Dr. Dullnig also ordered a cardiac enzyme analysis and prescribed to Benitz some medication for his indigestion and blood pressure. Dr. Dullnig also recommended that Benitz obtain follow-up care for his shoulder and high blood pressure, and get a complete heart work up.

Benitz visited Dr. Jim Donovan during the afternoon of January 9, 1995. He continued to be under Dr. Donovan's care until his death on November 27, 1995.

Barbara Benitz brought suit individually and on behalf of the estate of her husband and her children against Jim Donovan, M.D., Georgetown Medical Center Clinic, The Gould Group, Thomas Grabow, M.D., and Mitchell Max Dullnig, M.D. on the grounds that her husband did not receive proper treatment for his heart condition. She specifically alleged his condition remained undiagnosed and caused his death. The Gould Group and Dr. Dullnig moved for summary judgment alleging that Barbara Benitz put forth no evidence to show that their conduct was the proximate cause of her husband's death. Instead, they urged that Dr. Donovan's negligence was a new and independent cause of Mr. Benitz's death. The trial court granted their motion without stating its reasons for doing so.

Barbara Benitz appeals the summary judgment granted in favor of The Gould Group and Dr. Dullnig. She asserts that the trial court erred in granting the motion for summary judgment because she presented competent summary judgment evidence that the emergency room doctor's negligence proximately caused her husband's death. In addition, she argues that the doctrine of new and independent cause does not constitute a bar to the appellees' liability and is not a proper basis for summary judgment.

▮ Because the order granting summary judgment does not specify the grounds the court relied on, we must affirm the judgment if either of the theories raised in the motion for summary judgment is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

### STANDARD OF REVIEW

▮ The purpose of a no-evidence summary judgment motion is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Robinson v. Warner-Lambert and Old Corner Drug*, 998 S.W.2d 407, 410 (Tex.App.-Waco 1999, no pet. h.). It is

much like a pretrial directed verdict, and this court applies the same legal sufficiency standard in reviewing a no-evidence summary judgment as that used to review a directed verdict. *See Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied); *Gomez v. Tri City Community Hosp., Ltd.*, 4 S.W.3d 281, 283 (Tex.App.-San Antonio 1999, no pet. h.). We therefore review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Moore*, 981 S.W.2d at 269; *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted when the respondent brings forth more than a scintilla of probative evidence that raises a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Gomez*, 4 S.W.3d at 283. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711. However, less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create mere surmise or suspicion." *Gomez*, 4 S.W.3d at 283 (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)).

■■■ The underlying purpose of a traditional summary judgment is to eliminate unmeritorious claims. *See Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989). Accordingly, Texas Rule of Civil Procedure 166a(c) provides that where there is no genuine issue as to any material fact, the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In a summary judgment proceeding, the burden is on the moving party. *See Roskey v. Texas Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex.1982). To meet this burden, the movant must either disprove at least one element of the plaintiff's theory of recovery, or plead and conclusively establish each element of an affirmative defense.

*See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979). Once the movant establishes its right to summary judgment, the burden then shifts to the nonmovant to present issues that preclude summary judgment. *See id.* at 678; *see also Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 430 (Tex.App.-San Antonio 1993, writ denied).

■■■ We review a summary judgment de novo. *See Reyes v. Storage & Processors, Inc.*, 995 S.W.2d 722, 725 (Tex. App.-San Antonio 1999, pet. denied). In deciding whether there was an alleged fact issue raised to preclude summary judgment, we take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in the nonmovant's favor. *See Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

### PROXIMATE CAUSATION

■■■ In her first issue, Benitz claims the trial court erroneously granted the appellees' no evidence motion for summary judgment because she presented competent evidence of proximate causation. To prove medical malpractice in Texas, the plaintiff-patient shoulders the burden of proving that the defendant-physician breached the standard of care and that such a breach was the proximate cause of the plaintiff's injuries. *See Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex.1988). In this case, the appellees based their motion for summary judgment on the lack of evidence showing proximate causation. Therefore, whether the appellees breached the standard of care is not before us. Instead, we must determine whether Benitz put forth competent summary judgment evidence to raise a fact issue as to whether Dr. Dullnig's breach was the proximate cause of Mr. Benitz's death.

■■■ Proximate causation embraces two concepts: foreseeability of an event,

and the cause-in-fact of an event. Foreseeability means the defendant should have anticipated the danger that resulted from his negligence, whereas cause-in-fact means the defendant's negligence was a substantial factor in bringing about the injury and without which no harm would have occurred. *See Ortiz v. Santa Rosa Medical Ctr.*, 702 S.W.2d 701, 704–05 (Tex. App.San Antonio 1985, writ ref'd n.r.e.). To prove cause-in-fact, the plaintiff must establish a causal connection between the negligent act and the injury based upon "reasonable medical probability." *See Bottoms v. Smith*, 923 S.W.2d 247, 251 (Tex. App.-Houston [14th Dist.] 1996, no writ). The effect of this requirement is to bar recovery where the defendant's negligence deprived the plaintiff of only a fifty percent (50%) or less chance of avoiding the ultimate harm. *See id.*

The appellees filed a "no evidence" motion for summary judgment, claiming Benitz presented no evidence of proximate causation. As proof of their grounds for summary judgment, they introduced the affidavit of Dr. R. Lynn Rea. Dr. Rea's affidavit properly sets out his qualifications as a medical expert, the standard of care applicable to a physician working in an emergency room, and that he had reviewed the medical records regarding Joseph Benitz's January 9, 1995 visit to the emergency room. Dr. Rea concludes in his affidavit that, in his opinion, Mr. Benitz did not experience a myocardial infarction on either January 7th or 9th, and that the care provided to Mr. Benitz in the Emergency Department at Medina Community Hospital on those dates met the appropriate standard of care at all times. He further opined that the treatment Mr. Benitz received in the emergency room was not the proximate cause of Mr. Benitz's death.

Additionally, the appellees attached the deposition testimony of Dr. Michael Rothkopf, the plaintiff's medical expert, as summary judgment proof. The appellees assert that despite Dr. Rothkopf's testimony that Dr. Dullnig's failure to admit Mr. Benitz to the hospital was the proximate cause of his death, Benitz cannot prove such failure in fact proximately caused her husband's death. They maintain that this opinion is based on layers of inferences, amounting to no evidence and would allow a fact finder to merely speculate as to the direct cause of Mr. Benitz's death. Specifically, the appellees attack the following statements elicited from Dr. Rothkopf during his deposition:

Q: What specific consequences directly and proximately resulted from this supposed failure to be admitted at Medina Community Hospital on January 9, 1995?

A: Okay. Had he been admitted to the hospital, then I believe his heart attack would have been diagnosed because he would have had evolutionary changes in his EKG, which we know he did have. And he would have had abnormal cardiac enzymes. I believe. Now had he been admitted to the hospital and seen by another physician, ... [t]hat doctor might have had the option to treat the patient for the heart attack at that time, had he recognized it ...

The proximate problem would have been that now that they knew he had had a heart attack, he would have had a lot more extensive work up. And almost surely he would have ended up having angiography, which would have disclosed multivessel coronary artery disease, ... which most likely would have prevented his death from another heart attack or another ischemic episode 11 months later....

What I'm saying is in medical probability, with the kind of medical treatment we have today and the kind of standard work ups we have for a 41–year–old male who has had a lateral myocardial infarction, certainly at least 90 percent or 95 percent of 41–year–old males with lateral myocardial infarctions who are properly treat-

ed and diagnosed, even if they have three vessel coronary artery disease, would be alive 11 months later. There is still a small possibility that he could have died of a heart attack regardless of any treatment ...

The Houston court of appeals faced a similar issue in *Bottoms v. Smith*, 923 S.W.2d 247 (Tex.App.-Houston [14th Dist.] 1996, no writ). In *Bottoms*, the court examined expert testimony which was built upon probabilities and inferences to determine whether it was enough to raise a fact issue to preclude summary judgment. In that case, the plaintiffs brought a medical malpractice action against the physician and the clinic at which he worked alleging that the doctor's failure to perform a follow-up colonoscopy proximately caused the patient's death. *Id.* at 248. The defendants moved for summary judgment claiming that the plaintiffs had failed to raise a fact issue because their expert did not establish that the doctor's conduct fell below the standard of care, and alternatively, that the doctor's conduct was the proximate cause of the patient's death. The trial court granted their motion. The plaintiffs appealed.

In addressing whether the plaintiffs established proximate cause, the Houston court of appeals focused on one doctor's affidavit and deposition testimony which the plaintiffs offered as summary judgment proof:

If the appropriate diagnostic tests had been done, it is more likely than not, that a polyp or lesion would have been seen and diagnosed. If this polyp or lesion had been identified in September of 1987, it is more likely than not, that it would have been a Duke stage A or B cancer with a five (5) year survival rate of 88% or better.

The delay in the evaluation of Ms. Bottoms' condition and the fact that follow-up colonoscopies were not done to determine whether the polyps in 1986 had recurred in reasonable medical probability resulted in the progression in the stage of the disease from probably B1 or B2 to a D. This meant the patient, Ms. Bottoms, went from an approximate 88% possible five (5) year survival rate to a five (5) year survival rate of zero (0).

*Id.* at 251. The plaintiffs also offered deposition testimony of another doctor who stated that if the follow-up colonoscopy had been done, then it was more likely than not that something would have been seen to alert the health-care providers of the potential for cancer. *Id.* at 251–52. If the tumors or lesions had been identified, the doctor testified that there would have been a different result in the decedent's condition. *Id.* at 252. The court found that the plaintiffs' summary judgment proof was sufficient to raise a fact issue regarding the proximate cause of the decedent's death.

The evidence in this case is similar to the evidence in *Bottoms*. In both cases, there was expert testimony establishing a causal connection between the negligent act and the injury based on reasonable medical probability. In *Bottoms*, the plaintiffs' expert testified, in essence, that it was probable that with proper tests, a more timely diagnoses would have been made and the decedent's chance of survival would have increased. In the case of Mr. Benitz, the medical expert testified that it was probable that had he been admitted to the hospital, his heart attack would have been diagnosed and treated, and he would not have died when he did.

 Dr. Rothkopf's testimony does not amount to a layering of inferences as suggested by appellees. *See Briones v. Levine's Dep't Store, Inc.*, 446 S.W.2d 7, 10 (Tex.1969) (the law does not permit pyramiding one assumption upon another because the ultimate fact thus arrived at is conjecture and speculation). Instead, his testimony of causation is clearly and definitively built upon a series of probabilities based upon his medical expertise and amounts to at least a scintilla of evidence. Viewing his testimony in a light most fa-

vorable to Benitz, and disregarding all contrary evidence and inferences, her summary judgment proof would allow reasonable, fair-minded people to differ in their conclusions about the proximate cause of Mr. Benitz's death. Benitz's first issue is sustained.

### THE GOULD GROUP

■ In response to Benitz's claim that Dr. Dullnig's, and therefore The Gould Group's negligence was the proximate cause of Mr. Benitz's death, the appellees assert that "nowhere in Plaintiff's Second Amended Petition are there any allegations of negligence asserted against The Gould Group, while at the same time there are no allegations against The Gould Group for vicarious liability for the alleged acts of any of The Gould Group's agents." They further allege that Benitz failed to raise a fact issue with respect to The Gould Group's alleged negligence. However, in her reply brief, Benitz asserts that the appellees never presented in their motion for summary judgment any issue regarding the vicarious liability of The Gould Group.

■ A motion for summary judgment must state the specific grounds on which it is made. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). A party cannot rely on its brief to state the grounds for summary judgment. *See id.* There is no mention in the appellees' motion for summary judgment regarding the omission of any allegations of the vicarious liability of The Gould Group. Because the appellees do not raise the vicarious liability issue in their motion, summary judgment cannot be properly granted on this ground.

### NEW AND INDEPENDENT CAUSE

■ In her second issue, Benitz asserts that the trial court erred in granting the appellees' motion for summary judgment because a new and independent cause relieved them of any liability. Texas courts distinguish between a new and independent cause and a concurrent act. A concurrent act cooperates with the original act in bringing about the injury and does not cut off the liability of the original actor. *See Boorhem–Fields v. Burlington Northern R.R. Co.*, 884 S.W.2d 530, 536 (Tex.App.Texarkana 1994, no writ) (citing *Bell v. Campbell*, 434 S.W.2d 117, 122 (Tex.1968) and *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992)). A "new and independent cause," sometimes referred to as a superseding cause, however, is an act or omission of a separate and independent agency that destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes the immediate cause of such injury. *See Rodriguez v. Moerbe*, 963 S.W.2d 808, 820 (Tex.App.-San Antonio 1998, pet. denied) (citing *Young v. Massey*, 128 Tex. 638, 101 S.W.2d 809, 810 (1937)). The doctrine of "new and independent cause" is not an affirmative defense; it is one element to be considered by a fact finder in determining whether proximate cause exists. *Dallas Ry. & Terminal Co. v. Bailey*, 151 Tex. 359, 250 S.W.2d 379, 383 (1952); *Hall v. Huff*, 957 S.W.2d 90, 96 (Tex.App.-Texarkana 1997, pet. denied). In relying on the defensive claim of new and independent cause, Dr. Dullnig must prove as a matter of law that his negligent care was not a cause-in-fact and was not a foreseeable cause of Benitz's death. *See Hall*, 957 S.W.2d at 97.

■ To prove as a matter of law that the second actor's negligence is a new and independent cause, instead of a concurrent cause, the threshold issue is whether the second actor's negligent act was foreseeable. *See Rodriguez*, 963 S.W.2d at 821; *Hall*, 957 S.W.2d at 97. The new and independent cause must be one incapable of being foreseen by the original wrongdoer in the exercise of ordinary care. *See Hall*, 957 S.W.2d at 97. However, the mere fact that a subsequent cause of an injury is unforeseen does not necessarily mean that it constitutes a superseding cause. *See id.* This court has

adopted the following criteria in determining whether an act is a concurring or a new and independent cause:

a. the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

b. the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operations;

c. the fact that the intervening force is operating independently of any situation created by the actor's negligence or, on the other hand, is or is not a normal result of such a situation;

d. the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

e. the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

f. the degree of culpability of a wrongful intervening force in motion.

*Rodriguez,* 963 S.W.2d at 820.

In their motion for summary judgment the appellees again relied upon the deposition testimony of the Benitz's medical expert, Dr. Rothkopf. They assert that according to Dr. Rothkopf, Dr. Donovan, the physician who treated Mr. Benitz after his visit to the emergency room up until his death, could have conducted diagnostic tests that would have revealed the presence of atherosclerotic disease. In doing so, Dr. Donovan could have prescribed a course of treatment that, in all reasonable probability would have increased Mr. Benitz's chance of living beyond November 27, 1995. The appellees claim that Dr. Donovan's failure to do so constitutes a "new and independent cause" and prevents any act or omission on the part of Dr. Dullnig from being the proximate cause of Mr. Benitz's death.

In making their assertion, appellees do not suggest that Dr. Donovan's negligence was unforeseeable, nor do they present any evidence to that effect. Additionally, their motion for summary judgment does not mention or apply the above factors to the present case. We find that the appellees' motion for summary judgment was insufficient because it did not conclusively prove that the subsequent cause, namely Dr. Donovan's negligence, became a superseding cause. Therefore, it was erroneous for the trial court to have granted the summary judgment on those grounds, and we sustain Benitz's second issue.

### CONCLUSION

We find that Benitz presented sufficient summary judgment evidence to raise a fact issue regarding Dr. Dullnig's treatment of Mr. Benitz. Furthermore, The Gould Group and Dr. Dullnig did not conclusively prove that Dr. Donovan's negligence was a new and independent cause of Mr. Benitz's death in their summary judgment motion. We therefore find that the trial court improperly granted The Gould Group's and Dr. Dullnig's motion for summary judgment and reverse and remand this cause to the trial court for further proceedings.