**HUMBLE SAND & GRAVEL, INC., Appellant,**

v.

**Raymond GOMEZ, et al., Appellees.**

No. 06–00–00017–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 13, 2000.

Decided June 12, 2001.

488

P. Michael Jung, Strasburger & Price, LLP, Dallas, Joe M. Dodson, Page & Dodson, Llp, Beaumont, for appellant.

Lance P. Bradley, McPherson, Monk, Hughes, Bradley, Wimberly, LLP, Nederland, Robert E. White, Childs, Bishop & White Law Offices, Odessa, Darren L. Brown, John A. Cowan, Provost & Umphrey Law Firm, LLP, Beaumont, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Humble Sand & Gravel, Inc. appeals from a judgment awarding Raymond Gomez, et al., damages for personal injuries resulting from Gomez's use of a silica-based abrasive product (hereafter "silica flint" or "silica sand") supplied by Humble Sand. The jury found that the silica flint supplied by Humble Sand to Spincote, Gomez's employer, did not adequately warn users about the danger of the product. Humble Sand appeals to this Court, claiming that it had no duty to warn Gomez of the dangers of the silica flint because it only sold its product to sophisticated users. In the alternative, Humble Sand also contends that the trial court erred in preventing it from adequately presenting its causation defenses.

Gomez worked for Spincote at its facilities in Odessa and Corpus Christi from 1984 until 1987. Gomez performed abrasive blasting as part of his employment. Humble Sand supplied some of the abrasives used by Gomez. Gomez has subacute silicosis. Although he has no present impairment of lung function, he can no longer be exposed to dusty environments. Gomez presently works as a barber. Gomez would have become disabled from strenuous work within eight years, and he will become disabled from his current job within fifteen years. As a result of his exposure to silica dust, Gomez's life expectancy has been reduced by twenty to twenty-five years.

The connection between silica sand and silicosis has been well documented and known in the abrasives industry since the 1920's. Safety codes were enacted as early as 1938, and since the 1970's the Occupational Safety and Health Administration (OSHA) has required the use of air-supplied hoods for all employees engaged in abrasive blasting. OSHA also requires employers to develop operating procedures for the use of the protective hoods, to provide proper equipment to employees, to properly instruct employees on usage, and to ensure that the hoods are properly maintained and used. Spincote did not meet these standards.

Humble Sand packaged its silica flint in 100 pound bags. Humble Sand only sold its product to businesses using abrasive materials. Each bag contained a warning that stated:

**WARNING!**

MAY BE INJURIOUS TO HEALTH IF PROPER PROTECTIVE EQUIPMENT IS NOT USED.

Gomez testified that he saw this warning the first time he used a bag of the silica flint. He knew that breathing silica dust would be harmful, and he inquired about the proper safety precautions and followed the directions he was given. While blasting, Gomez wore an air-supplied hood with a paper dust mask underneath. Humble Sand's Material Safety Data Sheet, furnished to Spincote, recommended the use of air-supplied hoods for "eye protection." Gomez thought that the hood was to pro-

tect his face from the dangers of bounce-back particles, and he believed that the paper dust mask was for protection against nuisance dust. But the particles that penetrate the lungs are invisible to the naked eye, and an individual can inhale them without recognizing any danger. Humble Sand's Technical Fact Sheet, also furnished to Spincote, actually encouraged the reuse of the flint for blasting, which further breaks down the particles and caused Gomez even greater exposure because smaller particles are even more dangerous to the respiratory system. Humble Sand's Technical Fact Sheet did not mention silicosis or the harm that can result therefrom. At Spincote, the air-supplied hoses were too short, and the employees would remove their hoods while still in the dust-filled blast house. The hoods were also stored where dust collected in them, and there was testimony that the hoods were not in good condition.

Humble Sand's expert found that the warning on the bag did not inform Gomez that silica was an insidious, toxic hazard, about which the expert felt that Gomez had a right to be knowledgeable. In 1993, Humble Sand changed the warning on its bags of silica flint to read:

**WARNING**

BREATHING DUST OF THIS PRODUCT CAUSES SILICOSIS, A SERIOUSLY DISABLING AND FATAL LUNG DISEASE. AN APPROVED AND WELL MAINTAINED AIR SUPPLIED ABRASIVE BLASTING HOOD MUST BE WORN AT ALL TIMES WHILE HANDLING AND USING THIS PRODUCT. FOLLOW ALL APPLICABLE OSHA STANDARDS.

Humble Sand was aware of the dangers of silicosis and the proper safety procedures

when it placed the initial inadequate warning on its bags of silica flint. All of the knowledge imparted in the 1993 warning was known when Humble Sand first started selling silica flint in 1982.

■ Under Texas products liability law, the lack of adequate warnings renders a product defective or unreasonably dangerous. *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). In a situation where a duty to warn has been created, that warning must impart special knowledge. If that special knowledge already exists, then further information is not necessary. *Id.* at 66.

■ Warnings must be generally given to the ultimate user or consumer. *Dole Food Co. v. N. Carolina Foam Indus., Inc.*, 188 Ariz. 298, 935 P.2d 876, 880 (Ct. App.1996); *Natural Gas Odorizing v. Downs*, 685 N.E.2d 155, 163 (Ind.Ct.App. 1997). The duty to warn is nondelegable. *Downs*, 685 N.E.2d at 163. However, courts have crafted several exceptions which permit delegation of the duty to warn or which limit the general obligation of a distributor to supply warnings to the ultimate user or consumer. *Id.* These exceptions are largely based on the RESTATEMENT (SECOND) OF TORTS § 388 (1965).[1] *Id.*

■ A manufacturer, as well as all suppliers of a product, has a duty to inform users of hazards associated with the use of its products. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 591 (Tex.1986). In certain situations, a manufacturer or supplier may depend on an intermediary to communicate a warning to the ultimate user of a product. However, the mere

---

1. The RESTATEMENT (SECOND) OF TORTS § 388 (1965) specifically relates to product liability

actions grounded in negligence. However, the exceptions to the duty to warn have also

presence of an intermediary does not excuse the manufacturer from warning those users whom it should reasonably expect to be endangered by the use of its product. *Id.*

Even under the learned intermediary standard, when a warning to an intermediary is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user. *Id.; Bristol–Myers Co. v. Gonzales,* 561 S.W.2d 801 (Tex.1978). The manufacturer must also have a reasonable assurance that the warning will be communicated to the ultimate user by the intermediary. *Alm,* 717 S.W.2d at 591–92; *John Deere Co. v. May,* 773 S.W.2d 369, 379 (Tex.App.—Waco 1989, writ denied). The existence of a physician-patient relationship is crucial to the application of the learned intermediary doctrine. *See Wyeth–Ayerst Labs. Co. v. Medrano,* 28 S.W.3d 87, 93 (Tex.App.—Texarkana 2000, no pet.); *Khan v. Velsicol Chem. Corp.,* 711 S.W.2d 310, 313 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Such a relationship does not exist in the situation at hand.

The pivotal inquiry of whether the sophisticated user defense is available is a fact-specific evaluation of the reasonableness of the supplier's reliance on the third party to provide the warning. *Adkins v. GAF Corp.,* 923 F.2d 1225, 1230 (6th Cir.1991). For the sophisticated user exception to apply, the intermediary must have knowledge or sophistication equal to

that of the manufacturer or supplier, and the manufacturer must be able to reasonably rely on the intermediary to warn the ultimate consumer. *Downs,* 685 N.E.2d at 164. Reliance is only reasonable if the intermediary knows or should know of the product's dangers. *Id.* Actual or constructive knowledge may arise where either the supplier has provided an adequate explicit warning of such dangers or information of the product's dangers is available in the public domain. *Id.* Reliance on constructive knowledge, rather than actual knowledge, of the intermediary is more problematic in instances where the dangers of a product are more severe. *Id.* at n. 13. The danger of silicosis is death.

A supplier does not fully discharge its duty by instructing and warning an employer. The supplier must give adequate instructions and warnings to the employees who actually use the product, if there is a practical means to do so. *Khan,* 711 S.W.2d at 316. A supplier may not be relieved from liability even if the employer has full knowledge of the danger. *Id.; see Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975). When the supplier does not provide the product in bulk, but in containers that can be expected to reach the employees that use the product, the warnings and instructions on the label must be adequate. *Khan,* 711 S.W.2d at 316. It has been established, and not challenged in this appeal, that the warning Humble Sand placed on its bags during the relevant

been applied to claims founded in strict liability on the theory that there is no doctrinal distinction between negligence and strict liability failure to warn actions under the Restatement. *Smith v. Walter C. Best, Inc.,* 927 F.2d 736, 739 (3d Cir.1990); *Dole Food Co. v. N. Carolina Foam Indus., Inc.,* 188 Ariz. 298, 935 P.2d 876, 880 n. 4 (Ct.App.1996); *Natural Gas Odorizing v. Downs,* 685 N.E.2d 155, 163 n. 11 (Ind.Ct.App.1997); *but see Russo v. Abex Corp.,* 670 F.Supp. 206, 207 (E.D.Mich.

1987) (finding that the sophisticated user defense developed in negligence because liability turns on reasonableness, but it does not exist in strict liability because a seller is duty bound to warn all foreseeable users and the risk of an intermediary failing to warn is imputed on the seller as a matter of law; Michigan products liability law also recognizes separate causes of action for both breach of implied warranty and negligent failure to warn or to make safe).

period was not adequate. Humble Sand's expert testified that Gomez had the right to be told that the silica in the dust could cause death. The expert also testified that Humble Sand had an obligation to warn Gomez about the hazards of its product. The ultimate consumer has to at least be put on notice of the dangers by a warning. The warning used here did not accomplish this. This is especially important considering that silica is an insidious danger which is not obvious to those, like Gomez, who worked with the silica flint.

Under the Restatement view, a court focuses on the conduct of the supplier of the dangerous product, not on the conduct of the intermediary. *Eagle–Picher Indus., Inc. v. Balbos*, 326 Md. 179, 604 A.2d 445, 464 (1992). Proof that the intermediary knew that the product was dangerous does not, in and of itself, absolve the supplier of a duty to warn ultimate users. *Id.* The finder of fact considers a variety of factors in order to determine whether the supplier reasonably relied on the intermediary to warn users. *Id.* These factors include (1) the dangerous condition of the product; (2) the purpose for which the product is used; (3) the form of any warnings given; (4) the reliability of the third party as a conduit of necessary information about the product; (5) the magnitude of the risk involved; and (6) the burdens imposed on the supplier by requiring that all users be directly warned. *Willis v. Raymark Indus., Inc.*, 905 F.2d 793, 796–97 (4th Cir.1990); *Balbos*, 604 A.2d at 464; *see Ritchie v. Glidden Co.*, 242 F.3d 713, 724 (7th Cir.2001); *Dole Food Co.*, 935 P.2d at 881. In applying these factors, the silica flint was to be used in sandblasting, which broke down the particles; thus, the product was dangerous. The warning placed on the bag did not inform Gomez of the possible harm that could result or the proper method of pro-

tection from such harm. Spincote did not possess the requisite knowledge of the proper safety mechanisms to be followed, and if certain individuals at Spincote were aware of the danger, they were not reliable in conveying that information to Gomez. The magnitude of the risk was great in that silicosis causes severe health problems and death, while the burden on Humble Sand of placing an adequate warning on the bag was extremely low. The balancing of the factors weighs against Humble Sand's contention that it is absolved of liability by the sophisticated user defense.

Even in the situation of a bulk supplier, the duty to adequately warn ultimate users is only satisfied by proving that its intermediaries were adequately trained and warned, familiar with the propensities of the product, and capable of passing on a warning. *Alm*, 717 S.W.2d at 592. If the bulk supplier does not adequately warn and train the intermediaries, or if the intermediaries are incapable of passing on the received warning, then the bulk supplier has not discharged its duty to the ultimate users. *Id.; Medrano*, 28 S.W.3d at 91. When a bulk supplier supplies silica sand, it is reasonable for the supplier to rely on the knowledgeable intermediaries to disseminate warnings to workers because the supplier has little or no opportunity to warn later users. *See Goodbar v. Whitehead Bros.*, 591 F.Supp. 552, 566 (W.D.Va.1984), *aff'd sub nom. Beale v. Whitehead Bros.*, 769 F.2d 213 (4th Cir. 1985); *see Khan*, 711 S.W.2d at 313; *Balbos*, 604 A.2d at 464. But if the intermediaries purchased silica sand in fifty- or one-hundred-pound bags that were personally handled by the workers, then the balance of factors tilts toward requiring the supplier to place a warning on the bags. *See Balbos*, 604 A.2d at 464.

To be entitled to a sophisticated user instruction, suppliers must, at a

minimum, introduce evidence that they warned the intermediaries of the danger or that they knew a warning was unnecessary because the intermediaries were already aware of the danger. *Id.* at 465. Knowledge of an intermediary may be inferred from general publicity about the danger, but that inference must also support an inference that the supplier knew of the intermediary's knowledge. *Id.; but see Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 741 (3d Cir.1990) (bulk supplier case which found that it was reasonable for suppliers of silica flint to rely on intermediary's knowledge of silicosis because of amount of information available, regardless of whether suppliers actually ascertained that intermediary knew of the information). In the situation of asbestos exposure, which is known to be dangerous on a significant societal scale, a supplier may still not escape liability to an ultimate user. *See Willis,* 905 F.2d 793. Comment n of the Restatement clearly focuses on the supplier's knowledge and the reasonableness of its reliance on the employer-intermediary prior to and during the time workers were exposed. *Id.* at 797. The fact that an employer possesses knowledge of a product's dangers does not extinguish the supplier's liability unless the supplier can show that it had reason to believe the employer was acting to protect the employees. *Id.* There must be evidence that the supplier apprised the employer of the dangers involved or at least ascertained whether the employer could be reasonably relied on to disseminate information about the dangers of the product. *See id.*

Comment n of the Restatement of Torts § 388 states in pertinent part:

Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it. . . . [I]t is obviously impossible to state in advance any set of rules which will automatically determine in all cases whether one supplying a chattel for the use of others through a third person has satisfied his duty to those who are to use the chattel by informing the third person of the dangerous character of the chattel, or of the precautions which must be exercised in using it in order to make its use safe.

. . . .

Here, as in every case which involves the determination of the precautions which must be taken to satisfy the requirements of reasonable care, the magnitude of the risk involved must be compared with the burden which would be imposed by requiring them . . . and the magnitude of the risk is determined not only by the chance that some harm may result but also the serious or trivial character of the harm which is likely to result. . . .

Thus, while it may be proper to permit a supplier to assume that one through whom he supplies a chattel which is only slightly dangerous will communicate the information given him to those who are to use it unless he knows that the other is careless, it may be improper to permit him to trust the conveyance of the necessary information of the actual character of a highly dangerous article to a third person of whose character he knows nothing. . . . [I]f the danger involved in the ignorant use of a particular chattel is very great, it may be that the supplier does not exercise reasonable care in entrusting the communication of the necessary information

even to a person whom he has good reason to believe to be careful. Many such articles can be made to carry their own message to the understanding of those who are likely to use them by the form in which they are put out, by the container in which they are supplied, or by a label or other device, indicating with a substantial sufficiency their dangerous character. Where the danger involved in the ignorant use of their true quality is great and such means of disclosure are practical and not unduly burdensome, it may well be that the supplier should be required to adopt them. RESTATEMENT (SECOND) OF TORTS § 388 cmt. n; *Dougherty v. Hooker Chem. Corp.*, 540 F.2d 174, 178–79 (3d Cir.1976).

Courts in asbestos cases have adopted this balancing test and have found that asbestos-containing product manufacturers have an absolute duty to warn because of the unique and patent dangers of asbestos. *Russo v. Abex Corp.*, 670 F.Supp. 206, 208 (E.D.Mich.1987). There seems no logical reason why silica flint, with its well-documented and lengthy history of harm, which was well known by Humble Sand but not by Gomez, should not be treated similarly. Manufacturers of silica flint who do not provide the product in bulk should be required to adequately warn the ultimate user. This requirement stems from the grave health risks of silicosis and from the minute cost and effort that an adequate warning would require. A holding that no warning is required could lead to even more individuals being gravely harmed when a simple, yet adequate, warning could be placed. Suppliers of silica flint could "pass the buck" to an intermediary, regardless of how negligent, careless, and/or disinterested the intermediary may be, with no concern over the knowledge and dissemination of that knowledge to the ultimate users. This would relieve the supplier of all liability to protect ultimate

users. Comment n of Restatement Section 388 provides that a supplier must exercise even greater care in the selection of intermediaries when the chattel is likely to be extremely hazardous without proper warning. Richard C. Ausness, *Learned Intermediaries and Sophisticated Users: Encouraging the Use of Intermediaries to Transmit Product Safety Information,* 46 SYRACUSE L.REV. 1185, 1206 (1996). There are situations where the risk is so great that the supplier must provide a direct warning and not rely on an intermediary at all. *Id.*

The dissent cites to a number of cases for the proposition that the sophisticated user defense is absolute. All of the cases are distinguishable. The defense for bulk suppliers is separate from the pure sophisticated user defense because there is no possibility for a warning label or ability to reach the ultimate users. *See Roberts v. George V. Hamilton, Inc.,* No. 99 JE 26, 2000 WL 875324, at **4–5, 2000 Ohio App. LEXIS 2981, at *12 (Oh. Ct.App. June 30, 2000). Thus, *Smith,* 927 F.2d at 740; *Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1454 (6th Cir.1984); *Goodbar,* 591 F.Supp. at 566; and *Beale v. Hardy,* 769 F.2d 213, 214–15 (4th Cir.1985) (affirming *Goodbar* ) are all distinguishable. In *Younger v. Dow Corning Corp.,* 202 Kan. 674, 451 P.2d 177 (1969), the court was not confronted with a highly dangerous material such as the eventually fatal silica to which Gomez was exposed. *Younger* also had an admission that the warning was adequate, which was a contested issue at the trial court here. *See Dougherty,* 540 F.2d at 182. Both *Washington v. Dep't of Transp.,* 8 F.3d 296, 300 (5th Cir.1993), and *Davis v. Avondale Indus., Inc.,* 975 F.2d 169, 172–73 (5th Cir.1992), were based on Louisiana state law which makes the sophisticated user defense absolute against ultimate users as long as the inter-

mediaries were aware of the danger. Texas has no comparable law, and the Louisiana law goes against the balancing test specified in the Restatement. In *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 676 (5th Cir.1999), there was detailed evidence regarding the information and requirements that the supplier required of the intermediary, which are factors that are not supported by the evidence in the present case. In *Amos v. BASF Corp.*, the supplier not only provided the intermediary with detailed information of the dangers of the product, but the parties also had an agreement in which the intermediary agreed to comply with the safety specifications of the supplier. The supplier affirmatively ascertained the knowledge of the intermediary and then verified its safety procedures. *See Amos v. BASF Corp.*, No. 93–0222–D, 1996 U.S. Dist. LEXIS 20604, at *10–11 (W.D.Va. July 11, 1996). Humble Sand took no such precautions; therefore, the sophisticated user defense is unavailable to Humble Sand. Likewise, *Bean v. Asbestos Corp.* is not applicable to the present situation. *Bean* had an intermediary who had a long and distinguished history of being on the forefront of asbestos safety. The intermediary proved to the supplier that it was as knowledgeable as possible about the dangers of asbestos and the most current safety measures. *See Bean v. Asbestos Corp.*, Nos. 95–52, 71,234, 366–426, 1998 WL 972122, at *27–28 (Va. Cir. Ct. Feb.26, 1998). The record is void of any evidence that Spincote held itself out as an expert in the knowledge of silicosis. In fact, there is evidence showing that Spincote was not knowledgeable about silicosis, which Humble Sand could have remedied by proper instruction or an adequate warning.

Section 388 of the Restatement states:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

RESTATEMENT (SECOND) OF TORTS § 388; *see Younger*, 451 P.2d at 180–81. Comment n gives further background to Section 388, and it sets out the test for reasonableness, which determines whether the sophisticated user defense is available. *See* Kenneth M. Willner, *Note: Failures to Warn and the Sophisticated User Defense*, 74 VA. L.REV. 579, 596–98 (1988). Section 388 is not a bright-line rule. *See id.* at 597–98. The Restatement approach is followed by a majority of jurisdictions. *Id.* at 596. This approach, by encouraging direct warnings, provides greater assurance of warnings in situations where the chains of communication break down. *Id.* at 603.

The common-law duty approach focuses exclusively on the knowledge of the intermediary to the exclusion of any consideration of reasonableness. *Id.* at 592. The duty approach created a bright-line rule that once the intermediary became sophisticated, then the supplier had no liability. *Id.* This approach encourages intermediaries to stay ignorant and not protect their employees. *Id.* at 595–96. By the facts of this case, to apply the term "sophisticated"

to Spincote would be to engage in loose terminology.

The dissent favorably cites to the *Goodbar* court.[2] The *Goodbar* court used a mixed duty/Restatement approach. *Id.* at 605. This approach utilizes the Section 388 test on reasonableness to determine whether the seller owed a duty of warning to the ultimate users. *Id.* Reasonableness forms the boundary of that duty. This shift in focus to duty from breach allows the court to determine the sophisticated user defense as a matter of law instead of delegating the question of breach to the jury. *Id.* Texas law supports this approach.

 The courts of Texas provide that the adequacy of a warning is a question of fact to be determined by the jury. *Alm,* 717 S.W.2d at 592; *Munoz,* 732 S.W.2d at 65; *see also Balbos,* 604 A.2d at 464. However, the determination of whether a duty to warn exists in a given situation is a matter of law to be decided by the court. *Munoz,* 732 S.W.2d at 65; *see Alm,* 717 S.W.2d at 595. Duty is a question of law for the court to decide from the facts surrounding the occurrence. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Durham Transp., Inc. v. Valero,* 897 S.W.2d 404, 410 (Tex.App.—Corpus Christi 1995, writ denied). In determining whether a defendant owed a duty to a plaintiff, the court considers the risk involved, foreseeability, and likelihood of injury. *Phillips,* 801 S.W.2d at 525; *Valero,* 897 S.W.2d at 410. The court weighs these factors against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Phillips,* 801 S.W.2d at 525; *Valero,* 897

S.W.2d at 410. The trial court found that Humble Sand had a duty to Gomez, and the jury found that the warning was inadequate.

Humble Sand brought forth evidence and testimony that the mistakes made by Spincote in protecting its employees from the possibility of silicosis were similar to mistakes being made across the country. Humble Sand would have this Court find that a manufacturer is not required to presume that a sophisticated user will violate OSHA regulations. The case relied on for this proposition, and cited by the dissent, states that it is not "reasonably foreseeable" that an employer would not follow OSHA standards. *Huber v. Niagara Mach. & Tool Works,* 430 N.W.2d 465, 468 (Minn.1988). This case is distinguishable because it did not deal with an insidious danger. *See id.* The case is also distinguished within itself as the Minnesota Supreme Court notes that its decision "does not conflict with our prior decisions establishing that the manufacturer of a finished product has a duty to warn ultimate users of dangers presented by its product and this duty may not be delegated to an intermediary." *Id.* at 468 n. 2. Humble Sand's expert testified that it is not reasonably foreseeable to expect that OSHA regulations will be followed accurately.

 Ken Gray, former vice president and general manager, and head of safety at Spincote, testified that the dangers of silica sand were not obvious and that he continually learned about the dangers. Humble Sand was aware of the dangers of silica sand, which have been well known in the industry for decades. There is no evidence in the record of any attempts by

**2.** *Goodbar v. Whitehead Bros.,* 591 F.Supp. 552 (W.D.Va.1984), *aff'd sub nom. Beale v. Whitehead Bros.,* 769 F.2d 213 (4th Cir.1985), is factually distinguishable because it involved a bulk supplier.

Humble Sand to ascertain the knowledge of Spincote's management or employees regarding the dangers of silica sand. It is clear that Spincote knew of some of the dangers, but it is also clear that Spincote was unaware of all the dangers and the proper methods to protect its employees. Humble Sand relied on the insignificant warning it had placed on the individual bags and on a general industry knowledge about the dangers of silica sand. These actions, or more appropriately, lack of actions, did not put Gomez on notice of the danger. Humble Sand did not pass its knowledge to Spincote, and Spincote did not possess full knowledge of the possible harm and necessary precautions.[3] Humble Sand has not met the threshold to assert the sophisticated user defense. Therefore, Humble Sand retained its duty to warn the ultimate user, Gomez, which it failed to do. As a result of this failure, harm has resulted. Humble Sand's reliance on the sophisticated user defense is unavailing.

Humble Sand contends the lower court erred by failing to instruct the jury on the sophisticated user defense. To preserve error in the charge, a party must make objections to the defective submissions in the court's charge or submit requests for additional questions, definitions, or instructions that are omitted from the charge. TEX.R. CIV. P. 272–274; *Flo Trend Sys., Inc. v. Allwaste, Inc.*, 948 S.W.2d 4, 10 (Tex.App.—Houston [14th Dist.] 1997, no writ). Humble Sand submitted four alternative instructions. Error was preserved.

■ The trial court is required to submit to the jury requested questions on valid defenses if the pleadings and any evidence support such questions. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992). The Texas Supreme Court has stated that, "So long as matters are timely raised and properly requested as part of a trial court's charge, a judgment cannot be permitted to stand when a party is denied proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence." *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992); *see also Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 836 (Tex.1986) (in products liability suit the proper issues for the jury are queries on the existence of a product defect and its causal connection to the accident; additional instructions merely serve to distract the jury's attention from the essential issues of the case).

■ The trial court "shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277. However, the trial court has considerable discretion in submitting the case to the jury. *Id.*; *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974); *Am. Home Assurance Co. v. Brandt*, 778 S.W.2d 141, 143 (Tex. App.—Texarkana 1989, writ denied). A trial court's refusal to submit requested instructions will not be overturned absent an abuse of discretion. *Magro*, 721 S.W.2d at 836.

■ There was no error by the trial court. Texas products liability law provides that the determination of whether a duty to warn exists in a given situation is a matter of law to be decided by the court. *Munoz*, 732 S.W.2d at 65; *see Alm*, 717

---

**3.** Without producing evidence of warning or instructing Spincote about any danger, Humble Sand did make a Technical Fact Sheet available, which stated that the silica flint could be reused several times. The more times the product is used, the finer the silica particles become, and the risk of harm becomes even greater. The Technical Fact Sheet did not provide the proper safety measures to be taken or outline the possible harm that could result.

S.W.2d at 595. The trial court determines the validity of the sophisticated user defense as a matter of law. The jury determines whether the warning was adequate. *Alm*, 717 S.W.2d at 592; *Munoz*, 732 S.W.2d at 65; *see also Balbos*, 604 A.2d at 464.

By the prior jurisprudence in Texas products liability law, this Court is swayed toward the mixed duty/Restatement approach. *See Alm*, 717 S.W.2d at 592; *Munoz*, 732 S.W.2d at 65; *see generally* Willner, *supra* at 605. The court below had the responsibility to determine the validity of the sophisticated user defense via the Section 388 reasonableness test. *See Goodbar*, 591 F.Supp. at 557. Finding that Humble Sand had a duty to warn Gomez, the trial court submitted to the jury the determination on whether the warning was adequate. The trial court did not err in denying Humble Sand's proposed jury questions on the sophisticated user defense.

Humble Sand also contends that the trial court erred in preventing it from adequately presenting its causation defenses. First, Humble Sand argues that the trial court erred in excluding the evidence of Gomez's superseded pleading, wherein Gomez alleged that Spincote had intentionally injured him. Humble Sand also claims error in the exclusion of numerous admissions relating to other causes of injury. The third alleged error related to causation is that the trial court erroneously refused to instruct the jury on the defense of new and independent cause.

 Causation is an integral part of negligence. Negligence is comprised of three elements: duty on the part of one party to another, breach of that duty, and injury to the person to whom the duty is owed as a proximate result of the breach. *City of Gladewater v. Pike*, 727 S.W.2d 514, 517 (Tex.1987). Negligence requires

a showing of proximate cause. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995). Proximate cause consists of both cause in fact and foreseeability. *Id.; Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 935 (Tex.App.—Texarkana 1997, writ denied). Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury, which would not otherwise have occurred. *Allbritton*, 898 S.W.2d at 775. Foreseeability requires that the actor, as a person of ordinary intelligence, would have anticipated the danger that the actor's negligent act created for others. *Pike*, 727 S.W.2d at 517.

 Negligence requires a showing of proximate cause, while products liability causes of action require a showing of producing cause. *Odell*, 948 S.W.2d at 935. Producing cause differs from proximate cause. Producing cause is an efficient, exciting, or contributing cause that, in a natural sequence, produces the injuries or damages complained of and but for which the injuries would not have occurred. *Allbritton*, 898 S.W.2d at 775; *Odell*, 948 S.W.2d at 935–36. Producing cause requires a lower burden than proximate cause, because foreseeability is not required. *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 (Tex.1993); *Odell*, 948 S.W.2d at 936. Both proximate cause and producing cause require causation in fact. *Odell*, 948 S.W.2d at 936. Causation in fact requires that the defendant's conduct be a substantial factor in bringing about the plaintiff's damages. *Allbritton*, 898 S.W.2d at 775; *Odell*, 948 S.W.2d at 936. Causation must be based on a reasonable probability, not just mere possibility. *Odell*, 948 S.W.2d at 936. Absolute certainty is not required, nor must the plaintiff exclude every other possibility. *Id.* The only requirement to a finding of ultimate fact is proof of a causal connection beyond

the point of conjecture or mere possibility. *Id.*

There can be concurrent proximate causes of an accident. All persons whose negligent conduct contributes to the injury, proximately causing the injury, are liable. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). There may also be more than one producing cause of an injury. *Gen. Motors Corp. v. Hopkins*, 548 S.W.2d 344, 351 n. 3 (Tex.1977); *Dover Corp. v. Perez*, 587 S.W.2d 761, 764 (Tex. Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Where several causes producing harm are concurrent and each is an efficient cause without which the injury would not have happened, then the injury may be attributed to all or any of the causes. *Perez*, 587 S.W.2d at 765.

At some point in the causal chain, the defendant's conduct or product may be too remotely connected with the plaintiff's injury to constitute legal causation. *Allbritton*, 898 S.W.2d at 775. Policy considerations must eventually be weighed in defining the limits of legal causation. *Id.*

In order to reverse a judgment based on the error of the trial court in the admission or exclusion of evidence, it must be shown that the trial court committed error and that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). The error will not normally be reversible for erroneous rulings on the admissibility of evidence where the evidence in question is cumulative and not controlling on a material issue dispositive of the case. *Id.*

The admission or exclusion of evidence is committed to the sound discretion of the trial court. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence that was excluded or admitted. *Id.* at 753–54. To determine whether the case turns on the evidence in question, the entire record must be reviewed. *Id.* at 754. A trial court abuses its discretion when it acts without regard for any guiding rules or principles.

Humble Sand seeks reversal on the trial court's decision to exclude the superseded pleading of Gomez in which he claimed that Spincote had intentionally injured him. Humble Sand contends that admission of this evidence could have caused the jury to render a different decision, in favor of Humble Sand, on the issue of causation.

In this regard, Humble Sand first takes the position that Gomez's superseded pleading shows that Spincote committed a criminal act against him. Humble Sand argues that any evidence of criminal conduct bears substantially on causation and directs this Court to federal law which states that causing the death of an employee through the willful violation of an OSHA regulation is a crime. 29 U.S.C.A. § 666(e) (West 1999). While recognizing that this is not a federal court, or a criminal suit, and that Gomez is not deceased, we will nonetheless address Humble Sand's contention.

Generally, a person has no legal duty to protect another from the criminal acts of a third party. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998). This rule is not absolute. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). Foreseeability is the start of the analysis to determine the extent of the duty to protect against criminal acts of third parties. *Cain*, 972 S.W.2d at 756. An actor's negligence is not superseded by the criminal conduct and will not be excused when the criminal

conduct is a foreseeable result of such negligence. *Travis,* 830 S.W.2d at 98. "Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable." *Cain,* 972 S.W.2d at 756 (quoting *Walker,* 924 S.W.2d at 377). In the situation at hand, it is clear that the alleged criminal conduct by Spincote is foreseeable from the inadequate warning that Humble Sand provided. Humble Sand's expert testified that it was foreseeable that OSHA regulations would be violated. There was also testimony that many industrial workplaces had similar OSHA violations in the use of silica flint. Humble Sand knew that silicosis was a real danger in the use of silica flint. *See id.*

It is true, as Humble Sand contends, that improper exclusion of a superseded pleading can constitute reversible error. *See Westchester Fire Ins. Co. v. Lowe,* 888 S.W.2d 243, 252 (Tex.App.—Beaumont 1994, no writ); *Scurlock Oil Co. v. Jofrion,* 390 S.W.2d 526, 531 (Tex.Civ.App.—Tyler 1965, no writ). However, a trial court can also commit error by admitting a superseded pleading into evidence. *See Huff v. Harrell,* 941 S.W.2d 230, 239 (Tex.App.—Corpus Christi 1996, writ denied) (error was not reversible, though, because no harm resulted from its admittance).

 An admission against interest in an abandoned pleading may be used in evidence, but it is not conclusive. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 294 (1956); *Huff,* 941 S.W.2d at 239. When a pleading has been abandoned, superseded, or amended, it ceases to be a judicial pleading and is no longer a judicial admission. *Kirk v. Head,* 137 Tex. 44, 152 S.W.2d 726, 729 (1941); *Huff,* 941 S.W.2d at 239. However, the discarded pleading is still a statement that can be introduced in evidence as an admission. *Kirk,* 152 S.W.2d at 729; *Huff,* 941 S.W.2d at 239.

In order for an abandoned pleading to constitute an admission, it must contain a statement relevant to a material issue in the case that is inconsistent with the position taken by the party against whom it is introduced. *Huff,* 941 S.W.2d at 239.

 Gomez admitted at trial that Spincote's conduct was a contributing cause of his disease. In doing so, Gomez did not take a position that was inconsistent with the superseded pleading, which asserted that Spincote was intentional in its actions. Humble Sand asserts that it was inconsistent for Gomez to assert that its warning was inadequate and to also claim that Spincote's actions were intentional and, therefore, the superseded pleading should be admitted. Although a jury may have considered the assertion by Gomez that Spincote intentionally harmed him, it is not necessarily material toward the adequacy of Humble Sand's warning, nor is it clearly inconsistent with Gomez's position at trial, since he admitted that Spincote contributed to his injuries. Thus, it cannot be definitively established that the trial court abused its discretion.

Humble Sand also fails to establish that the exclusion of the superseded pleading would be the deciding factor to change the decision of the jury. There was no evidence before the trial court that Spincote intentionally sought to harm Gomez. The only source for such evidence was the abandoned pleading. Texas jurisprudence does not generally allow for the admission of evidence that portrays the state of mind or intent of another. *See* Tex.R. Evid. 602; *Lehman v. Corpus Christi Nat'l Bank,* 668 S.W.2d 687, 689 (Tex.1984); *Peters v. Gifford–Hill & Co.,* 794 S.W.2d 856, 862 (Tex. App.—Dallas 1990, writ denied); *Combs v. Fantastic Homes, Inc.,* 584 S.W.2d 340, 344 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e.,* 596 S.W.2d 502 (Tex.1979) (per curiam); *Taylor v. Lewis,* 553 S.W.2d 153,

161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Although party admissions are viewed somewhat differently than other types of evidence, *see Taylor v. Owen*, 290 S.W.2d 771, 775 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.), this was still a declaration on the intent of a third party who was not part of the litigation on which no other evidence was presented. The pleading was baseless in its assertion. Even if the superseded pleading were admissible, it cannot be clearly stated that the case turned on this groundless evidence.

Humble Sand also contends that the trial court erred in excluding the admissions of Gomez that the fault of numerous other product suppliers and Spincote customers had caused his injury. Humble Sand sought to introduce into evidence Gomez's 147 answers to requests for admissions. Humble Sand argues that these admissions bore directly on the issues of proximate and producing cause.

Humble Sand promulgated its primary trial strategy on the theory that Spincote was the sole cause of Gomez's injuries. Humble Sand now appeals from the trial court's exclusion of evidence that there were numerous causes of Gomez's injuries and that the sheer volume of potential causes could weigh on the jury's determination of whether Humble Sand's conduct was a proximate or producing cause. A party may set forth more than one type of defense. TEX.R. CIV. P. 48.

Gomez objected to the requests for admissions as calling for purely legal conclusions, containing undefined legal terms, and as breaches of the attorney work product privilege. A party is not compelled to answer requests for admissions that call for purely legal conclusions, opinions, or statements of subjective intent. *Esparza v. Diaz*, 802 S.W.2d 772, 775 (Tex. App.—Houston [14th Dist.] 1990, no writ).

Answers which constitute admissions of law are not binding on a court. *Id.* A request for admission may properly ask a party to admit or deny an issue of fact or a mixed issue of fact and law. TEX.R. CIV. P. 198.1; *Fort Bend Cent. Appraisal Dist. v. Hines Wholesale Nurseries*, 844 S.W.2d 857, 858 (Tex.App.—Texarkana 1992, writ denied). Examples of the contested admissions reveal that many of the requests for admissions were legal in context:

3. The abrasive blasting sand supplied by Texas Mining Company [a defendant that settled with Gomez before trial] was marketed with inadequate warnings.

4. The inadequate warnings of the Texas Mining abrasive blasting sand rendered the product unreasonably dangerous.

5. The inadequate warnings supplied with the Texas Mining abrasive blasting sand were a producing cause of Raymond Gomez's disease of silicosis.

6. Texas Mining Company was negligent in its marketing of Texas Mining Abrasive Blasting Sand.

. . . .

105. The negligence of Tide Air, Inc. [a defendant that settled with Gomez before trial] was a proximate cause of Raymond Gomez's disease of silicosis.

. . . .

116. Titan Machinery [a defendant that settled with Gomez before trial] was negligent in its lease of the Pauli & Griffin abrasive blast pot.

■ Many of the denied admissions could be classified as mixed questions of law and fact. *Laycox v. Jaroma, Inc.*, 709 S.W.2d 2, 4 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *see also Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d

361, 365 (Tex.1987) (an expert can testify to having an opinion on negligence and proximate cause as a mixed question of law and fact if provided the proper legal concepts to analyze the facts); *Keene Corp. v. Rogers,* 863 S.W.2d 168, 176–77 (Tex. App.—Texarkana 1993, no writ). However, the trial court could have found that many of the requests for admissions called for purely legal conclusions. A conclusion is purely legal when no facts are established. *Gaynier v. Ginsberg,* 715 S.W.2d 749, 759 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). All 147 of the contested admissions were submitted to the court at once. Where evidence is offered as a whole, and only part is admissible, it is not error for the trial court to sustain an objection to the en masse offer. *Pennington v. Brock,* 841 S.W.2d 127, 132 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Glenn v. Gidel,* 496 S.W.2d 692, 699 (Tex.Civ.App.—Amarillo 1973, no writ). It is not the duty of the trial court or objecting party to separate the admissible from the inadmissible. *Pennington,* 841 S.W.2d at 132; *Glenn,* 496 S.W.2d at 699. No clear abuse of discretion exists in the denial of the admissions from being placed into evidence. Even if the trial court erred in denying the admissions, the error was harmless. Humble Sand was allowed and did put into evidence at numerous times during the trial the use of other manufacturers' products and possible causes for Gomez's disease. Any error in excluding evidence is harmless if other admitted evidence reveals the same facts as the excluded evidence. *Bryant v. Transcon. Gas Pipe Line Corp.,* 821 S.W.2d 187, 188 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Humble Sand suffered no harm from the denial of the admissions from evidence.

■■■■ Humble Sand's final point of error on the issue of causation is that the trial court erred by not submitting an instruction on the defense of new and independent cause. Where testimony has raised the issue of new and independent cause, the trial court should define the issue. *Tarry Warehouse & Storage Co. v. Duvall,* 131 Tex. 466, 115 S.W.2d 401, 405 (1938). It is reversible error if the trial court failed to define new and independent cause in its definition of proximate (and producing) cause. *Id.; Young v. Massey,* 128 Tex. 638, 101 S.W.2d 809, 810 (1937); *Cook v. Caterpillar, Inc.,* 849 S.W.2d 434, 440 (Tex.App.—Amarillo 1993, writ denied). New and independent cause is the act or omission of a separate and independent agency which destroys the causal connection between the negligent act or omission of the defendant and the injury. *Young,* 101 S.W.2d at 810; *J. Wigglesworth Co. v. Peeples,* 985 S.W.2d 659, 665 (Tex.App.—Fort Worth 1999, pet. denied). The new and independent cause becomes, in itself, the immediate cause of such injury. *Young,* 101 S.W.2d at 810. If a case does not involve the question of new and independent cause, then it is not necessary to define it. *Id.* The record must be examined to determine if evidence exists of a new and independent cause to determine if it should have been defined for the jury. *Id.*

■■■■ New and independent cause is not an issue to be submitted to the jury, but it is an element to be considered by the jury in determining the existence of producing cause. *Perez,* 587 S.W.2d at 765. New and independent cause is an inferential rebuttal defense that may be submitted to the jury as an instruction. *Peeples,* 985 S.W.2d at 665; *Perez v. Weingarten Realty Investors,* 881 S.W.2d 490, 496 (Tex.App.—San Antonio 1994, writ denied); *see* Tex.R. Civ. P. 277. In a products liability case, whether an intervening act will constitute a new and independent

cause is generally a question of foreseeability.[4] *Perez,* 587 S.W.2d at 765. An intervening cause that is reasonably foreseeable by the defendant is not a new and independent cause that breaks the chain of causation. *Wolf v. Friedman Steel Sales, Inc.,* 717 S.W.2d 669, 672 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.).

There is a distinction between a true intervening act, which supersedes the original negligent act and operates as the efficient cause, and a concurrent act, which cooperates with the still-persisting original act in causing the injury. *Bell v. Campbell,* 434 S.W.2d 117, 122 (Tex.1968); *Boorhem–Fields, Inc. v. Burlington N. R.R. Co.,* 884 S.W.2d 530, 536 (Tex.App.—Texarkana 1994, no writ). When the new cause cooperates with the original negligence in causing the injury, the original negligence remains a proximate cause of the injury regardless of the fact that the new concurring cause was not reasonably foreseeable. *Bell,* 434 S.W.2d at 122; *Boorhem–Fields, Inc.,* 884 S.W.2d at 536. As previously noted in this opinion, there can be concurrent causes of an injury, and all parties whose negligence contributes to the injury have proximately caused the injury and are liable. *Travis,* 830 S.W.2d at 98; *Boorhem–Fields, Inc.,* 884 S.W.2d at 536.

■■■ The standard of review for error in the court's charge is abuse of discretion. *Texas Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990); *Isern v. Watson,* 942 S.W.2d 186, 190 (Tex.App.—Beaumont 1997, writ denied). An abuse of discretion occurs when the trial court acts without reference to guiding principles.

*E.B.,* 802 S.W.2d at 649; *Isern,* 942 S.W.2d at 190. The jury need not and should not be burdened with surplus instructions. *Acord v. Gen. Motors Corp.,* 669 S.W.2d 111, 116 (Tex.1984). An improper jury charge requires reversal only when, under the circumstances of the case, including the charge as a whole and the statements and arguments of counsel, the error was calculated to cause and probably did cause the rendition of an improper judgment. *Berry Prop. Mgmt., Inc. v. Bliskey,* 850 S.W.2d 644, 661 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.).

■■■ Humble Sand asserts that the actions by Spincote in failing to properly equip, train, and supervise Gomez, in violation of OSHA regulations, is sufficient for an instruction on new and independent cause. As such an inquiry rests on the test of foreseeability, this Court does not find the evidence persuasive to amount to an abuse of discretion. Humble Sand's expert testified that it was foreseeable that Spincote would not follow OSHA regulations. The actions of Spincote, which contributed to Gomez's injuries, were foreseeable to Humble Sand.

■■■ The trial court did submit a sole cause instruction in the jury charge. Where a sole cause instruction is given, a trial court does not abuse its discretion in denying an instruction on new and independent cause. *Bliskey,* 850 S.W.2d at 662–63; *but see Cook,* 849 S.W.2d at 440–41. The trial court's instructions to the jury were sufficiently based on the evidence to assist the jury in reaching a verdict without being superfluous. *See Bliskey,* 850 S.W.2d at 662. Under the

---

**4.** New and independent cause may not be available in strict products liability cases where foreseeability is not an element of causation. *See V. Mueller & Co. v. Corley,* 570 S.W.2d 140, 144–45 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *but see*

*Khan v. Velsicol Chem. Corp.,* 711 S.W.2d 310, 317 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Dover Corp. v. Perez,* 587 S.W.2d 761, 765 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

facts of this case, if Spincote's actions were a new and independent cause of Gomez's injuries, then Spincote's actions would have also constituted the sole cause of Gomez's silicosis. The trial court did not act without guiding rules and principles, and it did not abuse its discretion in denying an instruction on new and independent cause.

Humble Sand was not prevented from adequately presenting its causation defenses. Its contentions to the contrary are overruled.

The judgment is affirmed.

Dissenting Opinion by Chief Justice CORNELIUS

CORNELIUS, Chief Justice, dissenting.

I conclude that because the undisputed evidence shows that Humble Sand furnished the silica sand only to sophisticated users, as a matter of law, Humble Sand had no duty to warn Gomez of the dangers in using the silica sand.

As conceded by Gomez's experts, the connection between breathing silica dust and silicosis has been well known in the abrasives industry and fully documented since the 1920's. As a result of various studies, safety codes were in place as early as 1938 recommending the use of respirators for workers in abrasive blasting environments. By the 1960's, federal regulations required government contractors to use such safety equipment, and in the 1970's the Occupational Safety and Health Administration (OSHA) began requiring the use of air-supplied hoods for all employees engaged in abrasive blasting. OSHA also required all employers to develop operating procedures for the use of the protective hoods, to provide proper equipment for their employees, to instruct employees in their use, and to ensure that the respirators were properly maintained and used.

Gomez testified that he saw a warning on the bag of sand the first time he used it, and he understood that breathing silica dust would harm him. He also admitted that the plant manager told him it was dangerous and that he should avoid breathing it. Gomez also testified that because of the warning, he asked his foreman about the type of equipment involved, and the foreman told him he would be all right as long as he wore proper protection. Gomez testified that he consistently wore an air-supplied hood and dust mask while using the product.

A manufacturer or supplier of a product has a duty to inform users about hazards associated with the use of its product. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 591 (Tex.1986); RESTATEMENT (SECOND) OF TORTS § 388 (1965). There is no duty to warn, however, where the risks associated with the product are within the ordinary knowledge common to the community. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex.1995). Thus, the duty to warn is limited in scope and applies only to hazards of which the community is unaware. *Id.*

Whether there is a duty to warn is a question of law. *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Where there is a duty to warn and the manufacturer or supplier fails to give an adequate warning, there is a marketing defect that renders the product unreasonably dangerous. *Caterpillar, Inc. v. Shears*, 911 S.W.2d at 382.

There are three situations where the manufacturer or supplier has no duty to warn the ultimate users or consumers of the product. RESTATEMENT (SECOND) OF TORTS § 388, cmt. n. The first is where the manufacturer or supplier sells or supplies

the product to a learned intermediary who well knows the risks associated with the product, has been warned of those risks, is trained in procedures designed to avoid those risks, and can reasonably be relied on to take the appropriate precautions. *See Alm v. Aluminum Co. of Am.,* 717 S.W.2d at 591; *Wyeth–Ayerst Labs. Co. v. Medrano,* 28 S.W.3d 87 (Tex.App.—Texarkana 2000, no pet.). The second is where the manufacturer or supplier sells only in bulk and deals only with commercial buyers whose knowledge of the risks associated with the product is equal to that of the manufacturer or seller. An additional consideration in bulk sales or delivery cases is that the initial supplier has little or no effective way to package its product so an adequate warning can be communicated directly to the ultimate users or consumers. *Alm v. Aluminum Co. of Am.,* 717 S.W.2d at 592; *Munoz v. Gulf Oil Co.,* 732 S.W.2d at 65; *Khan v. Velsicol Chem. Co.,* 711 S.W.2d 310, 313–14 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Jones v. Hittle Serv., Inc.,* 219 Kan. 627, 549 P.2d 1383, 1394 (1976).

The third situation is where the manufacturer or supplier furnishes its product to a sophisticated intermediary or user who is experienced in the use of the product, and who is thoroughly aware of the risks associated with its use and the protective measures required to avoid those risks. The rationale behind the rule in this situation is that the manufacturer may reasonably rely on the sophisticated user to warn its employees of the risks in using the product and to take the precautionary measures required by knowledge and the law. *Curtis v. M & S Petroleum, Inc.,* 174 F.3d 661, 674–75 (5th Cir.1999); *Washington v. Dep't of Transp.,* 8 F.3d 296, 300 (5th Cir.1993); *Davis v. Avondale Indus., Inc.,* 975 F.2d 169, 173 (5th Cir.1992); *Smith v. Walter C. Best, Inc.,* 927 F.2d 736, 741 (3d Cir.1990); *Beale v. Hardy,*

769 F.2d 213 (4th Cir.1985); *Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1457 (6th Cir.1984); *Amos v. BASF Corp.,* No. 93–0222–D, 1996 U.S. Dist. LEXIS 20604 (W.D.Va. July 11, 1996); *Goodbar v. Whitehead Bros.,* 591 F.Supp. 552, 566 (W.D.Va.1984), *aff'd sub nom. Beale v. Whitehead Bros.,* 769 F.2d 213 (4th Cir. 1985); *Younger v. Dow Corning Corp.,* 202 Kan. 674, 451 P.2d 177 (1969); *Bean v. Asbestos Corp.,* Nos. 95–52, 71,234, 366–426, 1998 WL 972122 (Va. Cir. Ct. Feb. 26, 1998).

Because Humble Sand furnished the product Gomez used only to sophisticated users, as a matter of law, it had no duty to warn Gomez of the product's dangers. The uncontroverted evidence shows that Spincote was a sophisticated user of abrasive blasting products containing silica and shared the industry's long-held knowledge of the risks associated with the use of the product. It is also undisputed that Spincote had been directly warned about the dangers to its employees from using the silica sand, and had been required by OSHA regulations to warn its employees and furnish them the necessary protective equipment. Moreover, Spincote admitted that it was aware of the dangers in using silica sand, and was aware of the federal regulations requiring that it provide the mandatory safety information and protective equipment so its employees could handle the product safely.

Gomez argues that because Spincote failed in some respects to scrupulously comply with OSHA's safety regulations, Humble Sand could not reasonably rely on Spincote to adequately warn and protect its employees. I disagree. The existence of specific safety regulations applicable to the sophisticated user presents an especially strong case for reliance on that user by the manufacturer. The manufacturer is not required to presume that the sophisti-

cated user will violate the OSHA regulations. *Huber v. Niagara Mach. & Tool Works,* 430 N.W.2d 465, 468 (Minn.1988).

The evidence here shows that Spincote was part of a larger company which at the relevant times employed over 1,400 employees nationwide and focused on oilfield-related operations. Spincote's Odessa plant manager, Shorty Workman, testified that he had known since the 1950's that silica dust could "tear up your lungs," and that even in the 1950's when he had worked as a sandblaster, he had used an air-supplied hood for protection. He testified that he knew from the beginning of his work with sandblasting that a person could die from breathing the dust and that while he was plant manager he had fired some employees who did not use their safety equipment in the blasthouse. He also testified that each new employee was informed about the dangers of the work and the requirement that they use the safety equipment provided. Spincote's vice president, Ken Gray, testified that Spincote was aware of silica dust hazards and knew of its obligation to inform its employees about them, as did Kenneth Baker, the manager of Spincote's Corpus Christi plant. They also testified about the safety meetings held at the plant to inform their workers about the safety requirements of their jobs.

Gray, who had been hired by Spincote from a different profession, also testified that he became aware of the health risks involved with exposure to respirable free silica in 1982 and did not become aware that there was free silica in blasting sand until the mid 1980's, and that he was not familiar with silicosis until that time. He also testified that he made efforts to improve the workplace and that the company eventually limited high silica-containing abrasives and switched to garnet abrasives.

Former Assistant Secretary of Labor for OSHA, Dr. Eula Bingham, testified by deposition that she had been the head of OSHA during the late 1970's and until 1981. She testified that silicosis has been well known as an occupational disease since the 1930's and that federal laws or standards required or recommended the use of air-supplied respiratory equipment in silica sandblasting operations since at least 1938. She also testified that respiratory protection rules through OSHA went into effect in the early 1970's and that employers had the federally-mandated duty since the 1950's to have respiratory protection programs and written safety procedures in place.

These facts show without question that Spincote was a major manufacturing operation and that sandblasting was an integral part of its operations. The evidence shows that companies in that business had been informally aware of such dangers for decades, that warnings and directives had been set out by the federal government since the 1930's, and that formal detailed regulations had been promulgated and enforced by OSHA since the 1970's.

Gomez contends that because one of Spincote's officers testified he knew silica sand was dangerous but did not know that it could be fatal, a fact issue was raised on whether Spincote was sufficiently aware of the dangers of silica sand to be classified as a sophisticated user. Despite the allegedly limited knowledge of this witness, however, the evidence is conclusive that Spincote was aware of the dangers silica-based products presented to its employees from the knowledge that was common to the industry since the 1930's and that was explicitly set out in the OSHA regulations. In these circumstances, the limited knowledge of one of Spincote's officers could not defeat Spincote's classification as a sophis-

ticated user. *See Adams v. Union Carbide Corp.*, 737 F.2d at 1457.

Gomez also argues that Humble Sand did not show that it adequately inquired into Spincote's knowledge and its reliability to adequately warn its employees of the dangers of silica sand. This same contention was raised in *Goodbar v. Whitehead Bros.*, 591 F.Supp. at 561. The *Goodbar* court held that even without formal inquiry, the supplier could reasonably assume that the sophisticated user had substantial expertise in the use of the product and that it would perform its legal obligations as well as protect its financial interests by properly warning and equipping its employees.

For all the reasons stated, I would reverse the judgment and render judgment that Gomez take nothing.